ROBIN ARTHUR LANG, JOHN ALEXANDER FORBES-LEITH, ANDREW GEORGE FORBES-LEITH, ANNE ROSDEW FORBES-LEITH and MARY ELIZABETH FORBES-LEITH, by HOBART L. FOSHER, Their Next Friend; CHARLES DOUGLAS CONYERS LANG, ROBERT IAN ALGERNON FORBES-LEITH and LORNA MARSALIE PRIOR, Appellants, v. MISSISSIPPI VALLEY TRUST COMPANY, a Corporation, Successor-Trustee Under the Will of JEMIMA LINDELL, Deceased, and ISABEL VALLE BROOKINGS, Respondents, No. 41262—223 S. W. (2d) 404.

Division Two, September 12, 1949.

Motion to Remand Cause with Directions Overruled, October 10, 1949.

Opinion Modified on Court's Own Motion, October 10, 1949.

*Charles P. Williams* for appellants.

*Paul Bakewell, Jr.,* for Mississippi Valley Trust Company, successor-trustee.

*Luther Ely Smith, Harold C. Hanke* and *Victor B. Harris* for respondent Isabel Valle Brookings.

BARRETT, C.—Initially this was an action by remaindermen against a life tenant and the successor trustee to construe the will of Jemima Lindell who died in 1896. The will, executed in 1891, devised the residue of Mrs. Lindell's property to Judge Wilbur F. Boyle as trustee with discretionary power to sell trust property and invest the proceeds. Judge Boyle died in 1911 and, under the terms of the will, the Mississippi Valley Trust Company became the successor trustee but without power to sell real estate. Among the productive trust assets in 1896 was a lot and an eight-story building at Twelfth and Washington known as the Carleton Building. Until 1923 this property was occupied by the Carleton Dry Goods Company at an annual rental of $59,940. After the expiration of that lease the property was rented to another tenant until 1931 at an annual rental of $61,000. In 1931 a forty-nine year lease was executed at an annual rental of $75,000. The new tenant razed the Carleton Building and began the construction of a new ten-story building. A basement was dug and steel for a ten-story building was purchased. By the time the basement was completed the new tenant became involved finan-

cially and in 1935 the tenant and the trustee entered into an agreement by which the tenant paid the trustee $600,000 for the replacement value of the building, the rental to November 1935, interest on delinquent rent, taxes and $300,000 for the cancellation of the forty-nine year lease, a total of $1,160,013.56. In addition the tenant gave the trustee the steel purchased for the new building. Since 1935 the property has been unproductive and has been maintained at a loss, the only income from it being for sign rental. Because the property was unproductive and the successor trustee had no authority to sell real estate a suit was instituted for authorization to the trustee to sell its present one half interest in the property.

The life beneficiary of the income, Mrs. Isabel Valle Brookings, desired that the property be sold but in the suit for authorization to sell she raised the question whether the income from the trust or the principal should bear the charges for taxes and other expenses of the unproductive real estate from 1935 to 1942. It was determined, since the will provided that "such trustee shall, from time to time, as the same becomes due, collect and receive all rents, interest, dividends or other income proper from said trust property *out of which he shall first pay all taxes, insurance, repairs and other charges and expenses upon said property or any part thereof, and the expenses attending the execution of this trust, . . .* and he shall pay the net income remaining" to the named life beneficiaries, that the income and not the principal had to bear the taxes and other expenses of the unproductive real estate. Brookings v. Mississippi Valley Trust Co., 355 Mo. 513, 196 S. W. (2) 775, 167 A. L. R. 1424.

Subsequently there was an offer to purchase the property for the sum of $200,000. It was then that the remaindermen initiated this proceeding in 1946 for authorization to the trustee to accept the offer of purchase and to allot from the price the value to be assigned to the steel and to the land. In response to the proceeding Mrs. Brookings as the life beneficiary of the income made an additional issue of whether, after the sale, she was entitled to be reimbursed from the proceeds of the sale for taxes and expenses previously expended and borne by income in accordance with the court's decree, which now totals $37,488.19. In addition she sought to recover from the proceeds of the sale the sum of $19,100.83 as a reasonable return and allowance for loss of income during the unproductive period of the property. Upon motion the issues raised by Mrs. Brookings were separated, the court authorized acceptance of the offer of purchase and the land was sold, and this phase of the controversy was separately tried. The trial court disallowed her latter claim but found that there was nothing in the prior decision of this court or in Mrs. Lindell's will concerning the apportionment or allocation of proceeds from the sale of unproductive real estate and directed that she be reimbursed for the taxes and expenses which had been charged

to income. The court also allowed Mrs. Brookings' counsel a fee of $5000.00 to be paid from the principal of the trust and allowed counsel for the remaindermen and counsel for the trustee $2500.00 each. The remaindermen appeal from the judgment and allowances to Mrs. Brookings and her counsel and the life tenant appeals from the allowances to counsel for the remaindermen and the trustee and so much of the judgment as was adverse to her. In general and from their contrasting viewpoints the parties treat the two principal items involved, the $37,488.19 sought by way of reimbursement and the $19,100.83 claimed as an allowance for lost income, as though they were in the same category and were governed by the same rules and, for the most part, we will accept that apparent view even though the two items, in the circumstances of this case, may not fall in the same class.

Admittedly the proceeds from the sale of the property constitute principal and not income. In the former suit, when authorization to sell the property was sought, the life tenant, Mrs. Brookings, claimed that taxes and other expenses of unproductive real estate, which then totaled $18,347.32, should be charged against principal and not income. Because the quoted provision of the will required the trustee to collect and receive all income ''out of which he shall first pay all taxes, insurance, repairs and other charges and expenses upon said property or any part thereof'' it was held that these specific items were chargeable to income and not to principal and that these plain provisions of the will and the trust could not be disregarded. Brookings v. Mississippi Valley Trust Co., supra. Ordinarily, in the circumstances, the decision in that case would conclusively decide the burden and incidence of the charges for taxes and other expenses on unproductive real estate. There is, however, a difference in the problem before and after the sale of unproductive property. 2 Scott, Trusts, Sec. 241.3; 33 Am. Jur., Sec. 351, p. 862. When the case was formerly here the land had not been sold and the question of allocation was not then before the court and so for the purposes of this opinion we treat the two items as though they were in the same class and the determinative question is whether the life beneficiary may compel allocation. The rule the life beneficiary seeks to enforce is stated in Sections 240 and 241 of the Restatement of Trusts:

''Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary produces no income or an income substantially less than the current rate of return on trust investments, and is likely to continue unproductive or under-productive, the trustee is under a duty to the beneficiary entitled to the income to sell such property within a reasonable time.

Unless it is otherwise provided by the terms of the trust, if property held in trust to pay the income to a beneficiary for a designated period and thereafter to pay the principal to another beneficiary is property, which the trustee is under a duty to sell, and which produces no income or an income substantially less than the current rate of return on trust investments, or which is wasting property or produces an income substantially more than the current rate of return on trust investments, and the trustee does not immediately sell the property, the trustee should make an apportionment of the proceeds of the sale when made, as stated in Subsection (2)."

In the view we take of the case it is not necessary to determine what the phrase "Unless it is otherwise provided by the terms of the trust" means. 2 Scott, Trusts, Sec. 241.2, p. 1361. Plainly the quoted provision of the will deals, as the court previously pointed out, with net income and the incidence of taxes and other charges and we express no opinion on whether the clause is in fact a provision against allocation. For the purposes of this opinion we accept the life tenant's argument that there was no provision either for or against it and that generally and normally the case is one for the application of the rule. We also accept her view that the proceeding is one in equity and that allocation is a convenient auxiliary tool by which the courts may prevent inequities between life tenants and remaindermen when trust property is unproductive or overproductive and wasting. 4 Bogert, Trusts, Sec. 829, p. 305. Because of the variant factors involved in each case it is not possible to attempt any generalization as to the circumstances under which allocation will be sanctioned or when it will be denied. 33 Am. Jur., Secs. 354, 355. But, even with all these assumptions there are at least two reasons why the rule is inapplicable to the circumstances of this case, although neither factor is in and of itself determinative.

In the first place the successor trustee was not only not invested by the terms of the trust with a duty to sell property, unproductive or otherwise, but on the contrary the successor trustee had no authority whatever to sell property. The life beneficiary argues nevertheless that there was a duty to sell and that the trustee could and finally did secure, despite the terms of the trust, authorization from the court to deviate from its express terms. 1 Restatement, Trusts, Sec. 167. However, the life beneficiary and all the parties, the remaindermen and the trustee, joined in that phase of the case and were agreeable to the decree and the sale. In addition, while there were offers to purchase the property at rather substantial prices during its years of unproductivity there were no offers comparable to the $200,000 finally paid for the property. Representatives of the life beneficiary attempted to find buyers but were unable to do so. In any event the fact that the trustee could ultimately obtain

authority from a court to deviate from the terms of the trust is probably not the discretionary power and duty contemplated by the rule, at least in the circumstances of this case and the economic conditions from 1935 to 1942. The fact that the testatrix withheld authority from the successor trustee to sell property may be some manifestation of an intention on her part that the trustee was not under a duty to sell and it may negative any intention on her part to standardize the income and equalize benefits between life tenant and remaindermen. 4 Bogert, Trusts, Sec. 822, p. 263; 2 Scott, Trusts, Sec. 241.2; 33 Am. Jur., Sec. 355, p. 869. Compare: 40 Yale L. J., p. 275.

In the second place, while the vacant lot at Twelfth and Washington was a valuable piece of property it was as subsequent events have demonstrated but a comparatively small portion of the testamentary trust estate. Annotation 103 A. L. R. 1271, 1279. Aside from its value of $200,000 there is more than one million dollars in the trust estate. When the lease was cancelled in 1935 Mrs. Brookings as life tenant received $150,000 of the settlement as income. Lang v. Mississippi Valley Trust Co., 343 Mo. 979, 124 S. W. (2) 1198. Some portion of that sum certainly represented future income. Furthermore, through the years, Mrs. Brookings has received and from all that appears now will continue to receive $25,000 to $30,000 a year from the trust as the life beneficiary of its income. Comparatively, there is a loss to the life tenant but this is not an instance of any great hardship on the life beneficiary or of any great inequality between the respective rights of the life beneficiary and the remaindermen compelling the interposition of a court of equity. All the circumstances considered, particularly these two, the lack of a discretionary power of sale in the trustee and that the unproductive vacant lot is but a small portion of the trust estate, the purchase price should not be allocated either for income or by way of reimbursement but should be treated as principal. Annotation 103 A. L. R. 1271, 1279; 33 Am. Jur., Sec. 355, p. 869; 4 Bogert, Trusts, Secs. 822-829.

 The life tenant contends, since she raised the question of allocation and the ambiguity of the will concerning it, that the remaindermen and the trustee are not entitled to an allowance for their counsel. Since the trustee was concerned only with the sale and not with the immediate controversy between the life tenant and the remaindermen it is argued that the trustee is not entitled to counsel fees. In one sense the trustee was not concerned with the merits of the controversy between the life tenant and the remaindermen. However, the trustee was concerned with the preservation of the estate and the proper administration of the trust and its interpretation. So far as this phase of the controversy was concerned the trustee was a defendant and necessarily had to employ counsel. The situation is

rather unique in some respects. The trustee did not initiate either the original proceeding or this action. The remaindermen rather than the trustee initiated the original proceeding when authority to sell the property was sought (Brookings v. Mississippi Valley Trust Co., supra) and they filed the original petition in this action asking that the offer of purchase be accepted. The life tenant and the trustee were defendants in both actions. They were both agreeable to the trustee's authority to sell and to acceptance of the offer of purchase and as we understand received counsel fees for their services in that connection. In response to the remaindermen's proceedings the life tenant raised, first, the incidence of the burden of taxes and expenses and, second, the question of allocation. In one sense the life tenant's action was solely for her own benefit. Likewise the remaindermen's response to the life tenant's action was for their sole benefit. Both parties, so far as a mere construction of the trust is concerned could have been represented by the trustee. In this respect the life tenant and the remaindermen stand on an equal footing. It is doubtful that any of the parties, including the trustee, were solely interested in a mere abstract or hypothetical interpretation of the will and the trust and yet the determination of this proceeding is beneficial to the estate and to the parties and is necessary for the guidance of all concerned. As we have said, the trustee did not initiate the proceedings but had it done so the remaindermen and the life tenant would have been necessary parties with the right to be heard. In the circumstances there was certainly an ambiguity as to whether allocation was proper and permissible, after the sale, under the terms of the trust. In this regard the endeavors of all the parties ▆▆▆ were under the trust and its proper interpretation. This is not to be understood as approving allowances for counsel fees in all similar cases to all the litigants but in the peculiar circumstances of this case it is equitable that the trust fund should bear the expense of its own administration, including the allowance of fees to all the counsel. Lang v. Taussig, (Mo. A.) 194 S. W. (2) 743, 748; First National Bank v. Blocksom, (Mo. A.) 217 S. W. (2) 296, 301; St. Lous Union Tr. Co. v. Kaltenbach, 353 Mo. 1114, 1123, 186 S. W. (2) 578; Garrison v. Garrison, 354 Mo. 62, 188 S. W. (2) 644; Trautz v. Lemp, 334 Mo. 1085, 72 S. W. (2) 104.

The judgment awarding Mrs. Brookings $37,488.19 is reversed and in denying Mrs. Brookings' claim for $19,100.83 the judgment is affirmed. The judgment allowing counsel fees is affirmed and the cause is remanded to the circuit court. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.