Nora Annie THOMSON, Godfrey Edward Thomson, Harry A. Thomson, John C. Thomson, and Nora Annie Thomson and Harry A. Thomson, Trustees, Petitioners-Appellants,

v.

The UNION NATIONAL BANK IN KANSAS CITY, Successor Trustee, Under the Last Will of Harry Albert Thomson, Deceased, Defendant-Appellant,

and

Janet Elizabeth Thomson, Harry Albert Thomson, III, Kathleen Coley Thomson, James T. Thomson, Eric Thomson, John Godfrey Thomson, Defendants-Respondents.

No. 44847.

Supreme Court of Missouri.

Division No. 2.

May 14, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied June 11, 1956.

R. Carter Tucker, John Murphy, William H. Wilson, J. Gordon Siddens, Tucker, Murphy, Wilson & Siddens, Kansas City, for appellants-petitioners.

H. M. Langworthy, Clyde J. Linde, Robert B. Langworthy, E. F. Halstead, Billy S. Sparks, Kansas City, for respondent and cross-appellant Union National Bank in Kansas City, Successor Trustee, Langworthy, Matz & Linde, Kansas City, of counsel.

BARRETT, Commissioner.

On December 1, 1913, Mr. Harry Albert Thomson of Kansas City executed his will, in which, after several specific bequests, he bequeathed and devised all of his property, then of the approximate value of $60,000, to a corporate trustee in Kansas City. The trustee was to pay the income from the trust to his wife for life and at his wife's death to the children born of the marriage until they attained the age of forty years,

at which time the estate was to be divided among the children. In the event of the death of a child before attaining the age of forty years such child's interest was to be paid to his issue and if such deceased child had no issue that interest was to revert to the testator's estate. In addition, the wife was permitted to use the sum of $5,000 of the principal of the trust for the purchase of a home.

Mr. Thomson died on March 10, 1917, survived by his wife, Nora Annie Thomson, and three sons, Godfrey, Harry and John, then nine, seven and six years old. Since Mr. Thomson's death in 1917 the trustee has administered the trust, consisting almost wholly of personal property of the value of $54,299.90 in 1954, and has paid the income to Mrs. Thomson. For many years the trust estate produced an annual income of $3,600 to $4,800 but in recent years the income has declined, in 1949 to $1,332.41, in 1951 to $1,399.88, in 1952 to $1,397.73 and in 1953 to $1,350.33. Some years ago Mrs. Thomson exercised the right to purchase a home and, upon selling the property for $12,000, made a profit of $5,000. Mrs. Thomson is now seventy-four years of age and is afflicted with angina pectoris. She lives in Denver, Colorado, with two semi-invalid sisters. Godfrey is now forty-six and lives in Colorado, Harry is forty-four and is an assistant vice-president and trust officer of the La Salle National Bank in Chicago, and John is forty-three and lives in Ohio. Godfrey has no children, Harry has three children, two daughters and a son, born in the years 1938, 1941, 1947, and John has three children born in 1940, 1941 and 1945.

In 1953 Mrs. Thomson and her three sons instituted this action against the present corporate trustee. The action is denominated, "Petition For Declaratory Judgment To Transfer Trust Estate And To Construe Will," but its general purpose is either to destroy or terminate the trust and if neither of these can be accomplished authority is sought to permit a deviation from the express terms of the trust as to investments and invasion of the principal on behalf of Mrs. Thomson. The trial court found that Mr. Thomson's will was plain and unambiguous and was not void because in violation of the rule against perpetuities, that the trust was not subject to being terminated and, in the circumstances, that the court was not justified in authorizing a deviation from the terms of the will either with respect to investments or encroachments upon principal. Mrs. Thomson and her sons have appealed from that judgment. The court, however, allowed their counsel a fee of $1,500 and the trustee has appealed from that part of the judgment.

Mr. Thomson's will, after bequeathing his property to the trustee and providing that the income be paid to Mrs. Thomson for life and in the event of her death to his sons until they attain the age of forty years, provides that "At the death of my said wife" the trustee shall make a valuation and divide the property into as many equal parts "as may be necessary to allot an equal share of my estate to each of our children * * * giving to the issue of any child then deceased the part or share which would have descended to such child, if living. When such valuation shall have been completed, any of our said children who shall then be forty years of age and thereafter any of our said children when any of them shall become forty years of age, shall be given and shall receive in full settlement of all rights and interests in my estate such equal part or share from said Trustee, in cash or in such securities as each individual child shall choose and thereupon such distributee shall give to my said Trustee full and final discharge and release from all other and further interest in my said estate. * * * If any of our children shall die before reaching the age of forty years, leaving issue, then the share or shares of such child or children shall be paid to the issue of said child or children in the manner above set forth, at the time when each respective child or children, if living, would have reached the age of forty years; provided, however, that no such share or parts of my estate shall be so paid over until after the death of my said wife, Nora Annie Thomson. In the event of the death of any of our said children without issue, then

the share of such child or children shall revert to my estate.".

The appellants, Mrs. Thomson and her three sons, contend that under these provisions of the will the sons' remainder interests in the estate are contingent, not vested. Certain words and phrases are seized upon, *"At the death of my said wife," "when"* any child shall become forty, *"before reaching,"* which it is said bespeak futurity and do not connote a present or existing gift and therefore it is urged that it was the testator's intention not to devise an absolute estate to any of his children who either failed to survive the life tenant or failed to attain the specified age. As to the sons' children it is urged that the court erroneously declared that their possible property rights were "springing executory interests" but even if they were it is nevertheless urged that their interests are subject to the rule against perpetuities and void for remoteness of vesting. It is urged as to these children that their interests are contingent upon three things, death of the life tenant, death of one of the sons with children and survival of the children to age forty. Elaborate examples are supposed in an effort to demonstrate that in certain contingencies and circumstances their interests could not vest for twenty-two, thirty-five and even forty years and that, therefore, the provisions of the will plainly violate the rule against perpetuities. It is sought by these arguments and this reasoning to demonstrate that this will falls within Loud v. St. Louis Union Trust Co., 298 Mo. 148, 249 S.W. 629; St. Louis Union Trust Co. v. Bassett, 337 Mo. 604, 85 S.W.2d 569, 101 A.L.R. 1266 and St. Louis Union Trust Co. v. Kelley, 355 Mo. 924, 199 S.W.2d 344, 351. But, as has been pointed out by others, the limitations in the Loud and Bassett cases fall within the rule that "where a gift is made to a living person for life, with a limitation over to such members of a class as may attain an age above twenty-one years, if by any possibility *the class* may *at the time of distribution include persons born after the death of the testator,* the limitation over is too remote under the rule against perpetuities and is void." An-

notation 155 A.L.R. 698, 712. In the Kelley case the effect of the limitation was not only that the beneficiaries must have attained the age of thirty years but they "could be either children of the testatrix's daughters, or descendants of deceased children, or both" and the fee simple title would not vest in such grandchild unless and until he or she should attain the ages of twenty-five and thirty years. It was also pointed out that the children of the testatrix' daughters would be her grandchildren and descendants of such children would be at least her great-grandchildren and the grandchildren of daughters. St. Louis Union Trust Co. v. Kelley, 355 Mo., loc. cit. 936–937, 199 S.W.2d loc. cit. 351–352. And incidentally, if Lockridge v. Mace, 109 Mo. 162, 18 S.W. 1145, has not been overruled by having been so frequently distinguished from other cases, Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 695–696, 197 S.W. 261, 268, the case did involve a limitation to the testator's great-grandchildren following life estates to children if not to grandchildren. Annotation 18 A.L.R.2d 671, 677.

██ It is not necessary to a decision of this case, however, to enter upon an elaborate examination of the subject of vested and contingent remainders; except as specifically cited in this opinion the cases and authorities on the subject are carefully collected in McDougal v. McDougal, Mo. App., 279 S.W.2d 731. It is conceded by the appellants, if the will vests a fee simple title in remainder in the three sons upon the termination of the preceding life estate in the mother within the time allotted by the rule against perpetuities, that the remainder interest is valid notwithstanding that the fee simple title may subsequently be divested by the death of a son before attaining age forty. St. Louis Union Trust Co. v. Kelley, 355 Mo., loc. cit. 934–935, 199 S.W. 2d loc. cit. 350; 70 C.J.S., Perpetuities, § 14, p. 592; 2 Simes, Future Interests, Sec. 354; 2 Restatement, Property, Secs. 156–158, 187–189. The will does not violate the rule merely because possession is postponed or by reason of the fact that the interest was subject to being divested by a son's death

before age forty and his interest thereby passing under the will to his children. St. Louis Union Trust Co. v. Kelley, supra; Deacon v. St. Louis Trust Co., supra; annotation 110 A.L.R. 1450. It is not objectionable within the meaning of the rule to reasonably postpone possession of the particular estate until the beneficiary or the group of beneficiaries attain a certain age. Annotation 155 A.L.R. 698; 70 C.J.S., Perpetuities, § 16, pp. 595–597. A mere reading of these particular provisions indicate an immediate gift to the sons, all of whom were living when Mr. Thomson died, with possession postponed, not a gift upon a condition precedent of surviving to the stated age forty. 2 Simes, Future Interests, Sec. 355, p. 99; 2 Powell, Real Property, Sec. 332, p. 737; 6 American Law of Property, Secs. 24.18, 24.19, pp. 56, 61; 3 Page, Wills, Secs. 1261–1266. There are at least three cases from other jurisdictions involving limitations quite similar in purpose and force to the provisions of this will, in one case requiring an attained age of thirty-seven, in another forty and in the other forty-five, and in all of those cases it was held that the beneficiaries' interests were vested, not contingent, and that the limitations did not violate the rule against perpetuities. District of Columbia v. Clark, 84 U.S.App.D.C. 88, 175 F.2d 821; Gratton v. Gratton's Estate, 133 Or. 65, 283 P. 747; Hull v. Osborn, 151 Mich. 8, 113 N.W. 784. Likewise here, the sons' interests under this will were vested even though possession may have been postponed and the will is not void for having transgressed the rule against perpetuities. Deacon v. St. Louis Union Trust Co., supra.

The sons, all having passed the age of forty, and their mother, the life beneficiary of the income, have made assignments of all their interests and have entered into an elaborate agreement creating a "living trust" of the property involved here. The proposed trust is to be administered in Illinois under what is said to be Illinois law and permits investments other than provided in the will and encroachment, even to exhaustion, upon the principal, all for the benefit of Mrs. Thomson. It is argued that all their remainder interests have "indefeasible vested," that there has been a merger of the equitable estates of the life tenant and the remaindermen by reason of the assignments and, therefore, it is urged that the court should have recognized the assignments and the newly created trust and thereby have terminated the trust provided for in Mr. Thomson's will.

There are circumstances in which all the beneficiaries of a trust may consent to its termination but "If the continuance of the trust is necessary to carry out a material purpose of the trust, the beneficiaries cannot compel its termination." 2 Restatement, Trusts, Sec. 337. Likewise, "if the legal title to the trust property and the entire beneficial interest become united in one person who is not under an incapacity, the trust terminates." 2 Restatement, Trusts, Sec. 341. This situation is typically illustrated, "where the only purpose of the trust is to preserve the corpus of the fund for the person entitled to receive it, the acquisition by the life beneficiary of the right to receive the corpus at the termination of the trust, whether by purchase or inheritance, gives such beneficiary the right to have the trust dissolved." Annotation 2 A.L.R. 579; Muzzy v. Muzzy, 364 Mo. 373, 261 S.W.2d 927. As Professor Bogert has pointed out there are valid arguments for and against the termination of trusts in these circumstances, "But the majority of American courts which have considered this problem have come to the opposite conclusion, and have declined to decree the termination of an active trust, with purposes to be achieved, even though it was not of spendthrift character, and even though all cestuis were in existence, ascertained, competent, and before the court praying for its extinction. These courts lay great stress on the intent of the settlor and the duty of the court to aid in the execution of that intent." 4 Bogert, Trusts, Sec. 1002, pp. 502–508. As the appellants know, and as others have pointed out, three of the cases upon which they rely, Dado v. Maguire, 71 Mo.App. 641; Rector v. Dalby, 98 Mo.App. 189, 71 S.W. 1078 and Peugnet v. Berthold, 183 Mo. 61, 81 S.W. 874,

have been overruled in principal. Hamilton v. Robinson, 236 Mo.App. 289, 298, 151 S.W.2d 504, 509. What is proposed here would, of course, destroy this trust and defeat the explicit purposes so plainly stated in Mr. Thomson's will and the circumstances do not justify that result. Evans v. Rankin, 329 Mo. 411, 44 S.W.2d 644; Hamilton v. Robinson, supra.

Finally, it is urged, if the will is not void and the trust may not be terminated, that the court erred in refusing to broaden and enlarge the trustee's powers so as to permit encroachment upon the corpus of the estate and a deviation in investments so as to produce a more adequate income for Mrs. Thomson's support and maintenance. Mr. Thomson's will provided that his executor might retain the securities and investments in his estate at the time of his death and his wife was given authority, which she once forcibly asserted, to direct the sale of investments. But again Mr. Thomson explicitly provided that "In the event of any or all of such securities or investments being disposed of, *I hereby direct my said executor * * * to reinvest* the proceeds of such securities or investments as may be sold or disposed of, *by purchasing bonds of issues from outside the State of New York in which at that time the savings banks of the State of New York are authorized to invest their funds on deposit; or* likewise, such reinvestment of the proceeds of the securities in my estate may be made *in any bonds in which the funds on deposit in the postal savings banks in the United States may then be legally invested.*"

█ Again, it is not necessary to enter upon an extensive examination of the authorities; if by reason of circumstances not known to or anticipated by the settlor strict compliance with the terms of the trust would defeat or substantially impair the accomplishment of the purposes of the trust a court of equity has the power to authorize a deviation from its express provisions. Restatement, Trusts, Sec. 167; 4 Pomeroy, Equity Jurisprudence, Sec. 1062(b), p. 174; Bolles v. Boatmen's Nat. Bank, 363 Mo. 949, 255 S.W.2d 725. The power to permit

deviation, however, is an emergency power, only used to prevent a serious failure in the accomplishment of trust purposes. 3 Bogert, Trusts, Sec. 561. The terms of this will which create the trust, and are binding on both the executor and the trustee, are plain and unambiguous and there is no manifest intention on the part of the settlor that the trustee was to exercise his discretion and adjust his conduct to changed circumstances. 2 Scott, Trusts, Sec. 167, p. 836. The power to authorize deviations is exercised, primarily, in matters of administration and does not extend to the extinction or reduction of the interests of other beneficiaries. So, as to encroachment upon the principal in favor of the life beneficiary, "When the inquiry is merely the one of basic disposal, the conclusion that none of the corpus is given to the income beneficiary ends his claim." Annotation 1 A.L.R.2d 1328, 1335; 2 Scott, Trusts, Sec. 168.

█ Here it is urged that the testator had in mind economic conditions prevailing in 1913 when his will was executed and that he did not anticipate that quality bonds then earning 5½ to 6% interest would in the years to come earn 3% or less. In this connection it is urged that Mr. Thomson's primary concern was provision for the support and welfare of Mrs. Thomson. It is also pointed out that the limitation as to investments is upon his "executor" and not his "trustee." The partial validity of some of these suggestions may be accepted but it does not follow that deviation in investments should now be permitted. This is not to say that in no event would deviation ever be authorized, but it is to say that the present circumstances do not warrant the exercise of the authority. Mr. Thomson not only had in mind the production of income for his wife for life but, evidently, one of his dominant concerns was safety of investment and certainty of income. St. Louis Union Trust Co. v. Ghio, 240 Mo. App. 1033, 222 S.W.2d 556. For the first twenty-five years or more the specified investments have accomplished all the testator's primary purposes even in the face of inflation and changing notions as to the

safety and desirability of other types of investments. The testator's primary purposes have not been defeated or so substantially impaired by changed economic conditions (2 Scott, Trusts, Sec. 167; annotation 147 A.L.R. 819, 821) that the trustee should no longer be required to strictly conform to the directions of the trust and the settlor's explicit desires. 4 Pomeroy, Equity Jurisprudence, Secs. 1062, 1071, pp. 170, 196. "Thus, if a settlor has directed that the funds shall be invested in United States government bonds exclusively, the fact that such investments bring a very low rate of income at a given time will not ordinarily lead the court, on the application of the cestui, to direct the trustee to disregard the settlor's investment clause and to buy other legal investments which yield a higher rate. To follow the settlor's direction will give the cestui some income and all the benefit that the settlor intended him to have. The court will not employ its power of alteration in order merely to increase the benefits for the cestui and to bring to him a gift which he thinks the settlor should have made him." 3 Bogert, Trusts, Secs. 561–562, pp. 494–495.

■ As stated, the trustee has appealed from the order allowing a $1,500 fee to appellants' counsel. In requesting the allowance there is some inconsistency in the appellants' avowals but that, of course, is not a sufficient reason for disallowance of the fee. While there may have been some reasonable basis for a difference of opinion as to the construction of the will and the administration of the trust, Lang v. Mississippi Valley Trust Co., 359 Mo. 688, 223 S.W.2d 404; Bernheimer v. First National Bank, 359 Mo. 1119, 225 S.W.2d 745, the primary purpose of this action was to have the will declared void or to destroy the trust, particularly for the benefit of one of the beneficiaries and for that reason they are not entitled to an allowance of fees from the trust fund. Trautz v. Lemp, 334 Mo. 1085, 72 S.W.2d 104; Thatcher v. City of St. Louis, 335 Mo. 1130, 76 S.W.2d 677; St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 186 S.W.2d 578.

Accordingly the order allowing the attorneys' fees is reversed, otherwise the judgment is affirmed and the cause remanded.

BOHLING, C., dissents as to result on deviation.

STOCKARD, C., concurs.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.