Thomas R. FREY, Plaintiff–Appellant,

v.

Billy Eugene HUFFSTUTLER, Defendant–Respondent.

No. 14922.

Missouri Court of Appeals, Southern District, Division Two.

March 21, 1988.

Motion for Rehearing or Transfer Denied April 4, 1988.

Donald A. Hale, Paul L. Bell, Mazzei & Bell, Steelville, for plaintiff-appellant.

C. William Lange, Cuba, for defendant-respondent.

PER CURIAM:

Ann Reed died testate on March 23, 1984, in Crawford County. Her estate consisted of two parcels of real property, $2,367.72 in cash and personal property valued at $1,300.00. Plaintiff Thomas R. Frey, nephew of the testatrix, was the residuary and principal beneficiary of her will. The testatrix devised one tract of realty to defendant Huffstutler for life, remainder to plaintiff and his heirs, upon condition that the life tenant:

> "be allowed the full and free use, possession, and enjoyment of the above described real estate and that he not be held accountable to any person for waste."

Item II(4) of Ms. Reed's will further provided that:

> "... if any person who would take any interest in the above decribed [sic] real estate ... shall attempt to interfere with the said BILLY EUGENE HUFFSTUTLER in his full and free use, possession and enjoyment of the above described real estate, then the said BILLY EUGENE HUFFSTUTLER shall take the above real property in fee simple absolute and the remainder interest of THOMAS R. FREY, his heirs and assigns, shall be void and held for naught."

The other parcel of land, the cash and the personalty passed to the plaintiff under the residuary clause (Item III) of Ms. Reed's will. On September 25, 1985, the Probate Division of the Circuit Court of Crawford County entered its order approving the executor's final settlement, determining the persons in whom title to the decedent's property was vested, and ordering distribution.

The tract of land devised to the defendant is an 8–acre tract of land located in Crawford County. It has, or had, a house on it at the time of Ms. Reed's death. For purposes of administration, the value of the

land with the house on it was "about $39,-000." The defendant and Ms. Reed lived on the premises at the time of Ms. Reed's death. Shortly after the order of final distribution was entered, the defendant decided to demolish the house and substitute a trailer as a residence. He advised the plaintiff that he intended to do so. Plaintiff filed this action for a declaratory judgment and an injunction. The cause was tried to the court which found, among other things:

"... 3. That, the Last Will and Testament of Ann Reed stated that should any person who would take any interest in the real estate described in her Will attempt to interfere with Billy Eugene Huffstutler and his full and free use, possession, and enjoyment of the real estate, then Billy Eugene Huffstutler shall take said real property in fee simple absolute and the remainder interest of Thomas R. Frey be void and held for naught...."

In its conclusions of law, the court declared:

"... 3. That, as provided in Item II(4) of the Last Will and Testament of Ann Reed, the Plaintiff is a person who would take an interest in the real estate described in her Last Will and Testament or under the Statutes of Descent and Distribution of the State of Missouri; that, the Plaintiff did attempt to interfere with the Defendant in his full and free use, possession, and enjoyment of the real estate; and that, the Defendant shall take the real estate in fee simple absolute and the remainder interest of the Plaintiff shall be void and held for naught...."

The trial court vested the fee simple title to the 8–acre tract in the defendant. The trial court also found plaintiff liable for the ad valorem real property taxes assessed against the 8–acre tract for the year 1985, and awarded defendant an attorney's fee in the amount of $1,500.00. The plaintiff has appealed, assigning error in three respects. He argues: 1) That plaintiff's filing a declaratory judgment action seeking construction of the terms of the will "as relevant to the life tenant's threatened destruc-tion of the residence did not bring plaintiff-appellant within the provisions of the devise of the real estate, providing for a forfeiture of his remainder interest"; 2) the trial court erred in ordering the plaintiff to pay the 1985 real property taxes because plaintiff "had no duty as a contingent remainderman to pay said taxes which were the obligation of the life tenant, defendant-respondent," and 3) the trial court erred in awarding defendant an attorney's fee "because there was no evidence of statutory authority or contractual agreement for the awarding of attorney fees pursuant to Rule 87.09, and the court was, therefore, without authority to award attorney fees."

I

The merits of the first assignment of error depend on the application of a number of legal principles, not all of which have been recognized or developed by the parties. The precise meaning of the term "waste" has not been addressed. The possibility that the devise of a life estate without impeachment of waste may not authorize the unreasonable demolition of buildings or other structures has not even been mentioned by either party. We have some doubt that an instrument creating a life estate or an estate for years without impeachment of waste authorizes the unreasonable demolition of structures located on the land. It is not, however, our function to become an advocate for either party to the appeal. *Thummel v. King*, 570 S.W.2d 679, 686[9] (Mo.banc 1978); *Schlanger v. Simon*, 339 S.W.2d 825, 828 (Mo.1960); *State ex rel. Mayfield v. City of Joplin*, 485 S.W.2d 473, 476–77 (Mo.App.1972). We confine our discussion to the points briefed and suggested by the parties, and assume, without deciding, that the devise without impeachment of waste gave the defendant a right to demolish the house on the 8–acre tract.

It is also appropriate to note that the trial court received a good deal of parol evidence concerning the testatrix's intent. Counsel for defendant, without objection, meticulously refined and clarified the testa-

trix's intent with testimony from the defendant and the scrivener to the effect that the testatrix specifically had demolition of the house in mind when she devised the life estate without impeachment of waste. Parol testimony is sometimes admitted to resolve a latent ambiguity in a will, but parol evidence of a testator's intention or of the meaning of provisions in his will, as shown by his own declarations, is not competent. *Gehring v. Henry*, 332 S.W.2d 873, 876 (Mo.1960); *Evans v. Volunteers of America*, 280 S.W.2d 1, 5[9,10] (Mo.1955). This evidence was received without objection, but we may not consider it. The parol evidence rule is a rule of substantive law and not a rule of evidence and it must be applied on appeal even though the evidence was received without objection. *Commerce Trust Co. v. Watts*, 360 Mo. 971, 977, 231 S.W.2d 817, 820[7] (1950); *State Bank of Fisk v. Omega Electronics*, 634 S.W.2d 234, 237 (Mo.App.1982); *Connor v. Temm*, 270 S.W.2d 541, 546 (Mo.App.1954). Having made these preliminary observations, we consider those questions essential to an orderly disposition of the appeal.

### (A)

*What was the nature of the interests created by Item II of the will?*

■ The provisions of Item II must be considered sequentially. Item II provides:

"(1) I hereby give, devise and bequeath unto BILLY EUGENE HUFFS-TUTLER ... the following described real estate, and improvements thereon ...

[here the 8–acre tract was particularly described by metes and bounds].

(2) Upon the death of the said BILLY EUGENE HUFFSTUTLER, I give, devise and bequeath the above described real estate unto my nephew, THOMAS R. FREY, of Goldsboro, North Carolina, his heirs and assigns forever.

(3) *I hereby direct that the said BILLY EUGENE HUFFSTUTLER be allowed the full and free use, possession, and enjoyment of the above described real estate and that he not be held accountable to any person for waste.*

(4) I further direct that *if any person* who would take any interest in the above described real estate under this, my Last Will and Testament, or under the Statutes of Descent and Distribution of the State of Missouri as the same shall exist on the date of this instrument *shall attempt to interfere with the said BILLY EUGENE HUFFSTUTLER in his full and free use, possession and enjoyment of the above described real estate, then the said BILLY EUGENE HUFFSTUT-LER shall take the above real property in fee simple absolute and the remainder interest of THOMAS R. FREY, his heirs and assigns, shall be void and held for naught.*" (Our emphasis.)

The donating words of the devise are found in paragraphs one (1) and two (2) of Item II. If we look only to these two paragraphs, it is obvious that schematically, the devise is the equivalent of "To B for his life and then to C and his heirs." The creation of a life estate does not require the use of any particular phrase or words of art, *Greenleaf v. Greenleaf*, 332 Mo. 402, 407, 58 S.W.2d 448, 450 (1933); 1 Restatement of Property § 107 Comment e, Illustration 6, p. 334 (1936), and paragraphs one (1) and two (2) of Item II must be construed to devise the 8–acre tract to the defendant for life, remainder in fee to the plaintiff. *See* 1 Restatement of Property § 39, Illustration 1 (II).[1]

■ Is the remainder "vested" or "contingent"? Distinguishing between the two

---

**1.** The words of inheritance used in devising the remainder to the plaintiff were unnecessary in view of the express language of § 442.460, RSMo 1986. *Triplett v. Triplett*, 332 Mo. 870, 875, 60 S.W.2d 13, 16[5] (1933). Certain precedents suggest that a remainder is vested when it is limited to an ascertained person or persons with no further or other condition imposed upon the taking effect in possession than the determination of the precedent life estate. *Harlow v. Benning*, 357 Mo. 266, 269, 207 S.W.2d 471, 473 (1948). The scrivener may have used the words of inheritance found in paragraph

is often a matter of much difficulty.[2] Generally it may be said that a gift or grant of a life estate with remainder to a named person on the death of the life tenant creates a vested remainder on the death of the testator. *Harlow v. Benning*, 357 Mo. at 269, 207 S.W.2d at 473. In this particular case, resort to a rule of construction is useful. Professor John Chipman Gray stated that:

> "If the conditional element is incorporated into the description of, or into the gift to the remainder-man, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested...."

Gray, Rule Against Perpetuities § 108, p. 85 (3d ed. 1915). Paragraph four (4) of Item II divests the remainderman of his estate should he " ... attempt to interfere with the [life tenant] in his full and free use, possession and enjoyment of the [8-acre tract]." As we construe Item III, the plaintiff's interest is a vested remainder subject to complete defeasance upon the occurrence of a condition subsequent, although the characterization of plaintiff's remainder as "vested" or "contingent" is not essential to a determination of the merits of the appeal.

The word "devise" means a testamentary gift of real estate, Ballentine's Law Dictionary, p. 345 (3d ed. 1969), so in another sense the devise to the plaintiff was merely a species of conditional gift. Generally, the rule applicable to conditional gifts is that the testator may impose such conditions as he pleases as long as they are sufficiently definite to be enforced and are not impossible or illegal. *Thompson v. Thompson*, 175 S.W.2d 885, 888[4] (Mo. 1943); *American Cancer Society, St. Louis Division v. Hammerstein*, 631 S.W. 2d 858, 864 (Mo.App.1981); 5 Bowe–Parker: Page on Wills § 44.1, p. 396 (rev. ed. 1962). We must therefore consider the extent to which the plaintiff's gift was cut down, limited or qualified by the provisions of

paragraphs three (3) and four (4) of Item II of the will.

### (B)

*Is the condition imposed upon the gift to the plaintiff valid, and has it occurred in this case?*

■ Assuming, as we do, that the plaintiff was devised a remainder in fee in the 8-acre tract, subject to the defendant's life estate, it will be seen that the defendant's life estate was considerably enlarged by the provision that the defendant "not be held accountable to any person for waste." Although the term "waste" is not a very precise term, the definitions used by our courts encompass the demolition of a building. *First Nat. Realty & Loan Co. v. Mason*, 185 Mo.App. 37, 40–41, 171 S.W. 971, 972[2] (1914); *Champ Spring Co. v. B. Roth Tool Co.*, 103 Mo.App. 103, 108, 77 S.W. 344, 345 (1903). The trial court found that the defendant was granted a special license to commit waste, as permitted by § 537.420, RSMo 1986. The "full and free use, possession and enjoyment" of a life estate does not include the right to commit waste by removing buildings from the premises demised, 2 Tiffany, Real Property § 636, pp. 642–45 (3d ed. 1939), although occasionally the instrument creating a life estate allows specific acts which, in the absence of such provision, would constitute waste. 2 Tiffany, Real Property § 639, p. 648; 1 Restatement of Property § 141. The tenor and effect of paragraph three (3) of Item II is clear. The defendant had a life estate, without impeachment of waste. Of such provisions, a reliable text states:

> "It is well settled that a conveyance 'without impeachment of waste,' or with an express or implied authorization to perform certain acts which would otherwise constitute waste, will be given effect.... In a will or other unilateral conveyance, the intention of the donor, if expressed, will control; in a covenant,

---

two (2) of Item II to indicate an intention to create a *vested* remainder.

**2.** *See, generally,* 1 American Law of Property §§ 4.32–4.40 (Casner ed. 1952); Annot., 131 A.L. R. 712 (1941).

the intention of the parties, if expressed, will likewise be given effect...."

5 American Law of Property § 20.1, p. 72 (Casner ed. 1952). No reason is advanced why defendant's power to enjoy his life estate without impeachment of waste should not include the right to demolish the house.

A more unusual question of intention is presented by the use of the words "attempt to interfere" with defendant's "full and free use, possession and enjoyment" but we consider the testatrix's intention to be clear enough to warrant the conclusion the trial court reached, without resort to extrinsic evidence. Plaintiff's action, according to his brief, "was clearly for the purpose of construing the terms of the will with respect to the threatened demolition of the residence on the real property and was not in any manner ... an attempt to hold [defendant] liable for waste, but was solely for the purpose of construing the terms of the devise as incorporated in the will."

We cannot agree. The defendant had the right to use the 8–acre tract during his life, and that right included the apparent right to destroy or remove structures on the land. The defendant informed the plaintiff that he intended to demolish the residence which stood on the 8–acre tract. The plaintiff immediately sought a declaratory judgment *and* an injunction against demolition of the residence. Injunctive orders are, by nature, coercive and subject to enforcement by contempt. Section 526.220, RSMo 1986; *Engel Sheet Metal Equipment v. Shewman*, 307 S.W.2d 694, 697[4] (Mo.App.1957). It distorts the record to say that plaintiff in no manner sought to "interfere" with the defendant's proposed demolition of the residence.

We take it that questions concerning the rights of the beneficiaries of a will may be determined in an action for a declaratory judgment, *Stewart v. Shelton*, 356 Mo. 258, 263–64, 201 S.W.2d 395, 397–98[1–6] (1947), but the plaintiff did not limit himself to a declaration of his rights. He undertook to enjoin the performance of an act—demolition of the residence—which the defendant had a right to perform. We have examined and considered the plaintiff's argument that this case is similar to *Cox v. Fisher*, 322 S.W.2d 910 (Mo.1959), but *Cox* is factually so dissimilar to the case at hand that we do not regard it as controlling. We are convinced that *Cox* was decided on its peculiar facts, and the forfeiture clause found in the will of Ann Reed is wholly dissimilar to that found in the amendment to the trust indenture which was construed in *Cox*. It is unnecessary to discuss the point at greater length.

## II

*Did the trial court err in ordering the plaintiff to pay the real property taxes for the year 1985?*

As already noted, the plaintiff argues that the trial court erred in ordering him to pay the real property taxes assessed against the 8–acre tract in 1985. It was stipulated that the taxes for 1985 had not been paid.

Item I of the will states, in terms:

"I direct that all of my just debts and the expenses of my last illness and funeral be paid out of my estate as soon as practicable after my death, and that any and all taxes be paid out of my entire estate and not charged to the share of any beneficiary."

In paragraph two (2) of its findings, the trial court stated:

"2. That, the Last Will and Testament of Ann Reed declared that all taxes be paid out of her estate and not be charged to the share of any beneficiary, and that the real property taxes for the year 1985 have not been paid."

In the decretal part of its order, the court directed the plaintiff to pay the 1985 real property taxes assessed against the 8–acre tract in the amount of $180.18.

We must agree with the plaintiff that the trial court erred in ordering him to pay the real property taxes assessed against the 8–acre tract for the year 1985. The testatrix died in 1984, and taxes accruing after the death of the decedent are not debts or demands against the estate unless they have been assessed against it. *Cf. State ex rel. Rudder v. Haphe*, 326 Mo.

460, 466–67, 31 S.W.2d 788, 791 (1930). The defendant would have it that a remainderman should be liable to a life tenant for real property taxes which accrue after the death of the testatrix. With some exceptions not applicable to this case, title to a decedent's real estate vests directly in his heirs or devisees. *In re Bartels' Estate,* 238 Mo.App. 715, 719, 187 S.W.2d 348, 350[3, 4] (1945). The incidence of the ad valorem real property tax is upon the person who owns or holds the real property on the first day of January. Section 137.075, RSMo 1986, provides, in part that: "[e]very person owning or holding real property ... on the first day of January ... shall be liable for taxes thereon during the same calendar year." There is nothing in the record before us to indicate that commencement of the defendant's tenancy was delayed for any period after the testatrix's death. On January 1, 1985, the defendant was in possession of the 8–acre tract, and it is the duty of the life tenant to pay the taxes accruing after his tenancy begins. *Weller v. Searcy,* 343 Mo. 768, 781, 123 S.W.2d 73, 80 (1938), *Duffley v. McCaskey,* 345 Mo. 550, 554, 134 S.W.2d 62, 64[2], 126 A.L.R. 853, 855 (1939). It was the defendant's duty to pay the real property taxes for the year 1985, and the trial court should have ordered him to do so.

### III

*Did the trial court err in awarding attorneys' fees to the defendant?*

The plaintiff's final assignment of error is that the trial court erred in ordering him to pay the defendant an attorney's fee in the amount of $1,500.00. He argues that "there was no evidence of statutory authority or contractual agreement for the awarding of attorney fees pursuant to Rule 87.-09, and the court was, therefore, without authority to award attorney fees."

The trial court found as fact that the defendant had employed an attorney to represent him and had become liable for an attorney's fee. It concluded as a matter of law that attorney's fees are recoverable by those who prevail in declaratory judgment actions. It ordered payment of $1,500.00 by plaintiff to defendant's attorney as a fee.

Rule 87.09 provides that in any proceeding for a declaratory judgment, the court may make such award of costs as may be equitable and just. In a few cases presenting special circumstances, e.g., in *Bernheimer v. First National Bank of Kansas City,* 359 Mo. 1119, 225 S.W.2d 745 (1949), the word "costs" as it appears in Rule 87.09 has been interpreted to include attorney's fees. However, in *Bernheimer,* the action, although it was a declaratory judgment action, was filed in equity to obtain construction of a testamentary trust. The court was required to determine whether the minor plaintiff was the lawful issue of the body of his father, and the trustees, residuary legatees and potential unborn future issue of the father were parties. Our Supreme Court upheld an award of attorney's fees to all parties because there was an ambiguity in the phrase "lawful issue" and its resolution and attendant questions were "important to the testamentary trustees in ascertaining the meaning of the will, and in charting a course for the administration of the trust estate." *Bernheimer,* 359 Mo. at 1139, 225 S.W.2d at 755. A like result was reached in *Lang v. Mississippi Valley Trust Co.,* 359 Mo. 688, 223 S.W.2d 404 (1949), on the ground that a determination of the issues was beneficial to the trust estate and furnished a guide to all concerned.

In *Lang* and *Bernheimer* our Supreme Court emphasized the fact that the effect of the judgment was to furnish guidance for fiduciaries. In both cases the parties plaintiff were little more than stakeholders. More recently, that court has referred to *Bernheimer* as an "obvious exception" and has carefully noted that "[t]he rule in Missouri is that absent statutory authorization or contractual agreement, each litigant, with few exceptions, must bear the expense of his own attorneys' fees...." *Mayor, Councilmen, & Citizens, Etc. v. Beard,* 636 S.W.2d 330, 331[2] (Mo.banc 1982); *Arnold v. Edelman,* 392 S.W.2d 231, 239–40 (Mo.1965). This court has been solicitous of attorneys' rights to reasonable compensation for their services. *See,* e.g., *Westrich v. Westrich,* 694 S.W.2d 873, 878–80 (Mo.App.1985), 57 A.L.R.4th 697, 706–09

(1985). Nevertheless, in this case, we find no circumstances which justify the allowance of an attorney's fee to the defendant. The defendant was not a fiduciary seeking guidance for the future; he was simply undertaking to justify his destruction of a house and to enforce the provisions of an unusual forfeiture clause. The award of an attorney's fee was not justified and must be reversed.

To the extent the trial court's judgment purports to divest the plaintiff of his interest in the land devised to him by Item II(2) of the Last Will and Testament of Ann Reed and to vest title to that parcel of realty in the defendant in fee the judgment is affirmed; to the extent the judgment directs the plaintiff to pay real property taxes for the year 1985 on the 8–acre tract devised to the parties in Item II of the Last Will and Testament of Ann Reed, the judgment is reversed; to the extent the judgment purports to award an attorney's fee to defendant, the judgment is reversed. The judgment is reversed and the cause is remanded with directions to enter a judgment as indicated and as directed by the mandate of this court.

PREWITT, P.J., and HOGAN, FLANIGAN and MAUS, JJ., concur.