538 F.Supp. 615 (1982)
EMPIRE PETROLEUM, INC., Plaintiff,
v.
D. F. & ASSOCIATES, INC., a corporation, and Isaac Danzig, Defendants.
No. 79-1430C(3).
United States District Court, E. D. Missouri, E. D.
April 9, 1982.
*616 Lashly, Caruthers, Thies, Rava & Hamel, James J. Hennelly, Kenneth C. Brostron, St. Louis, Mo., for plaintiff.
Ben N. Messina, St. Louis, Mo., for defendants.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court for a decision on the merits, following trial to the Court. Count I of plaintiff's complaint is an action against Isaac Danzig on an account and on an account stated, arising out of the sale by plaintiff of certain goods, allegedly to defendant Danzig. Count II alternatively states the same causes of action against defendant D. F. & Associates, Inc., on the theory that Isaac Danzig was an agent of D. F. & Associates, Inc. At the conclusion of its evidence, plaintiff elected to submit its case against defendant Danzig alone, although plaintiff did not dismiss its case against D. F. & Associates, Inc.
After consideration of the testimony and exhibits introduced at trial, the parties' briefs and the applicable law, the Court hereby makes the following findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52:

FINDINGS OF FACT
Plaintiff, Empire Petroleum, Inc., is an Ohio corporation, with its principal place of business in that State. Plaintiff is a jobber of petroleum products.
Defendant D. F. & Associates, Inc. (hereinafter D. F., Inc.) is a Missouri corporation with its principal place of business in Hazelwood, Missouri. D. F., Inc., provides bookkeeping, recordkeeping, and management services for gasoline stations.
Defendant Isaac Danzig is a citizen of the State of Missouri. In 1976, Danzig was President of defendant D. F., Inc.
In November, 1976, David Urbanski was the plaintiff's General Manager. He was responsible for obtaining and soliciting accounts for plaintiff. On about November 15, 1976, Urbanski went to a gasoline station in the Toledo, Ohio area to get a contact for selling gasoline to the station. The *617 station had one sign that said "Bargain City Gas." Urbanski was told by an attendant at the station to contact "the owner," Isaac Danzig, in St. Louis. Urbanski obtained Danzig's telephone number from the attendant, which was (314) 731-2457.
On November 15, 1976, Urbanski called the number he had been given. The telephone was answered "D. F. & Associates." Urbanski asked to talk to Mr. Danzig, and Urbanski then had a conversation with Mr. Danzig in which he offered to sell gasoline for Bargain City stations in the Toledo area. They discussed the rates and credit terms for the sale of gasoline by plaintiff. Danzig told Urbanski that gasoline purchases should be billed to "Bargain City Service Stations, P.O. Box 129, Hazelwood, Missouri 63042."
Thereafter, on November 18, 1979, plaintiff received a call ordering gasoline for a Bargain City gasoline station on Lewis and Alexis Avenues in Toledo, Ohio. Orders for gasoline were received by one of plaintiff's secretaries over the telephone; the secretary typed up a purchase order, which was given to Urbanski, who then dispatched a transportation truck. The gasoline ordered on November 18, 1979, was delivered to the Bargain City station, and invoice # 16990 was prepared by plaintiff and sent to "Bargain City Service Stations" at the Hazelwood, Missouri address listed above. The invoice was paid by a check dated December 2, 1976, and drawn on the account of Toledo Alexis Service Station, Inc. The check was signed by Isaac Danzig.
Urbanski did not take the call which placed the November 18 order for gas. As stated above, usual procedures in plaintiff's office did not involve Urbanski in taking telephone orders. Urbanski did have numerous telephone conversations with Danzig after November 15, 1976, usually regarding changes in prices or rates. On those occasions when Urbanski placed a telephone call to (314) 731-2457, the telephone was always answered "D. F. & Associates." Urbanski and Danzig never met in person.
On November 26, 1976, plaintiff received another telephone order for gasoline for Bargain City gasoline stations in the Toledo area; this time the order was for a station on Woodville Avenue as well as the station on Lewis and Alexis Avenues. Invoices were duly prepared and mailed to "Bargain City Service Stations" at the Hazelwood, Missouri address listed above. The invoices were paid by checks drawn on accounts of Toledo Alexis Service Station, Inc. and Toledo Woodville Service Station, Inc.
"Toledo Woodville Service Station, Inc." (hereinafter "TWSS, Inc.") was, since January, 1969, the name of an Ohio corporation which had been incorporated in 1968 as "Bargain City Woodville Service Station, Inc." In March of 1969, when a certain lease was executed, Danzig was the President of TWSS, Inc.[1] Danzig was also President of TWSS, Inc., in 1976.
Toledo Alexis Service Station, Inc. (hereinafter "TASS, Inc.") was incorporated in March, 1969. Isaac Danzig was its President, at least in March of 1969 and March of 1970, when a certain lease and an amendment thereto were executed.[2]
In 1977, 1978, and through April of 1979, plaintiff continued to receive orders, at somewhat irregular intervals, for the sale of gasoline to the two Bargain City Gasoline stations mentioned above. The invoices were always sent by plaintiff to "Bargain City Service Station," "Bargain City," or "Bargain City Service Stat," sometimes followed by the word "Woodville" or "Alexis," at P.O. Box 129, Hazelwood, Missouri 63042. The invoices were always paid by checks drawn on the account of TWSS, Inc. or TASS, Inc. These checks were always signed by Isaac Danzig.
Urbanski did not see checks as they arrived in plaintiff's office. The checks were received in the mail by the secretaries, who *618 made up a "Daily Bank Deposit" sheet for plaintiff and deposited the checks. Some of these daily deposit sheets from 1976 and 1977 show that the checks received in payment for the gasoline delivered to the two Bargain City stations were listed under an account entitled variously as "Bargain City," "Toledo Alexis Service Station," "Toledo Alexis Service S. (Bargain City)," "Toledo Woodville S. S. (Bargain City)," "Bargain City (Toldeo Alexis S. S.)," "Bargain City (Toledo Woodville S. S.)," "Bargain City  Oregon,"[3] and "Bargain City  Alexis." Invoices for the two stations always carried the same account number, however, when an account number was shown: # 75100 in 1977 and 1978, and # 13300 starting in 1979.
The only person in plaintiff's office who might have seen at least some of the TWSS, Inc. and TASS, Inc. checks before mid-April, 1979, besides the secretaries, was plaintiff's controller, Joseph Borowitz. He was not an officer or director of plaintiff.
In October and November, 1978, Urbanski wrote two letters to P.O. Box 129, Hazelwood, Missouri, concerning increases in rates. One of these letters was addressed to "D. F. & Associates, Mr. Isaac Danzig" and the other was addressed to "Isaac Danzig, D. F. & Associates." Urbanski addressed the letters in this way because he had no other names to use regarding the Bargain City accounts.
In April of 1979, someone acting on behalf of defendant D. F., Inc. requested the plaintiff to deliver gasoline products, of the following prices, to the two Bargain City stations, on or shortly prior to the dates indicated:[4]

April 7, 1979 $3,927.00 Woodville Ave. Station
 " $1,792.70 "
April 16, 1979 $3,959.73 "
 " $2,034.03 "
 " $3,959.73 Lewis Ave. Station
 " $2,035.40 "
April 23, 1979 $3,322.50 "
 " $2,518.20 "
 (TOTAL: $23,549.29)

The gasoline products requested in April, 1979, were received by the stations for which they were ordered. The above prices for the gasoline products delivered were reasonable.
The plaintiff's invoices for these deliveries were addressed to "Bargain City Service Stat  Woodville" and "Bargain City Service Stat  Alexis" at P.O. Box 129, Hazelwood, Missouri 63042. The invoices were received at that address within about one week of their dates. However, no payment has been received by plaintiff for these deliveries, besides the $500 check described below.
In mid-April, 1979, Urbanski had a conversation with a business friend, Bill Beck, who asked him if he were selling to Bargain City stations. Beck told Urbanski to "beware," because there were two separate companies involved, and mentioned the names TASS, Inc., and TWSS, Inc. After hearing this, Urbanski returned to plaintiff's office and had the controller audit the Bargain City account and look at the checks. Urbanski saw the checks drawn on TASS, Inc. and TWSS, Inc. on April 15 or 20, 1979.
On April 26, 1979, having been informed that the Bargain City account was delinquent, Urbanski wrote to "Bargain City" at the Hazelwood address, requesting certain financial data. The letter informed Bargain City that until the requested information *619 had been received and reviewed, all deliveries would be on a C.O.D. basis. There were no more deliveries made by plaintiff to the Bargain City stations after April 23, 1979.
Early in May, 1979, Urbanski and Danzig had a telephone conversation in which Urbanski asked if Danzig were going to pay the Bargain City account. Danzig said that he would pay $500 on the account per week, starting in June, 1979, until it was paid. Plaintiff did receive one check dated June 15, 1979, drawn on the account of Toledo Alexis Service Station, Inc., and signed by Isaac Danzig, but it has not received any other payment on the April, 1979 deliveries.
The second amended answer of defendant D. F., Inc., to plaintiff's fourth interrogatory states that one of defendant D. F., Inc.'s bookkeepers, of unknown identity and who no longer works for defendant D. F., Inc., told Urbanski that D. F., Inc. was acting on behalf of TASS, Inc. and TWSS, Inc. This interrogatory answer was signed by Isaac Danzig. At trial Danzig claimed that he also informed Urbanski that D. F., Inc. was acting on behalf of TASS, Inc. and TWSS, Inc. The Court finds Urbanski's account in this regard to be more credible. The Court finds that Urbanski was not aware at least until mid-April, 1979, that there were other corporations involved. No one else at plaintiff talked to anyone about sales of gasoline to Bargain City stations, except the secretaries who took the orders.

CONCLUSIONS OF LAW
The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332.
This Court is required to apply the law, including the choice of law rules, of the forum state in this diversity action. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938); Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The parties have apparently assumed that the substantive law of Missouri governs this action. The Court agrees with that assumption in that Missouri has indicated adherence to the rules of the Restatement (Second) of Conflict of Laws (1971) in actions involving contracts. Nakao v. Nakao, 602 S.W.2d 223, 226-27 (Mo.App.1980); National Starch and Chemical Co. v. Newman, 577 S.W.2d 99 (Mo.App.1978). By analogy to § 292 of the Restatement (Second) of Conflict of Laws and comment e thereto, the Court concludes that if the defendants are liable to plaintiff under Missouri law, plaintiff is entitled to judgment.
Missouri law is clear that an agent who wishes to avoid personal liability on a contract must disclose not only the fact of his agency but also the identity of his principal. A. A. Electric Machinery Co. v. Block, 193 S.W.2d 631, 636 (Mo.App.1946). The Court has found that defendant Danzig did not disclose to plaintiff the fact that gasoline was being purchased for TWSS, Inc. and TASS, Inc.
However, that does not end the matter, because it is not possible for the Court to find that defendant Danzig ordered the gasoline products delivered by plaintiff in April of 1979. The Court has found, on the basis of certain answers of defendant D. F., Inc. to requests for admissions, that someone ordered those products on behalf of defendant D. F., Inc. The Court cannot say that the gasoline was ordered by or on behalf of defendant Danzig. David Urbanski did testify in deposition that Danzig "would talk to [plaintiff's] ordering secretaries" to order the gasoline in those instances where Urbanski did not take the order; but the Court does not find this sufficient to establish the fact that Danzig personally placed each call in which gasoline was ordered from plaintiff in April, 1979, in view of the fact that Urbanski normally did not take telephone orders. Urbanski did not identify any specific instances in which he personally took orders from Danzig by telephone. Deposition of D. Urbanski at pp. 89-90. Accordingly, the Court concludes that plaintiff has not proven its action *620 on an account against defendant Danzig.[5]
Because the plaintiff has not proven its action on an account against defendant Danzig, it has also failed to prove its action on an account stated against defendant Danzig. An "account stated" is an agreement between parties who have had previous financial transactions, that a certain balance is correct and due, and a promise by the debtor to pay the balance. Chisler v. Staats, 502 S.W.2d 424, 426 (Mo.App.1973). Because the evidence does not establish that plaintiff's April, 1979 dealings were with defendant Danzig personally, the plaintiff may not recover against defendant Danzig on a theory of an account stated. Crist Sod Co., Inc. v. Bruce, 599 S.W.2d 43 (Mo.App. 1980).
The plaintiff, as noted above, elected at the close of its case to submit as to defendant Danzig alone, recognizing the rule of Missouri law that the liability of an agent and an undisclosed principal is alternative, not joint, and that a plaintiff may only submit the case as against the agent or the principal. Kraehe v. Dorsey, 432 S.W.2d 367 (Mo.App.1968). Plaintiff's complaint alleged, in Count II, that defendant Danzig had acted as an agent for defendant D. F., Inc.; plaintiff thus was compelled to choose to pursue the liability of either defendant Danzig or defendant D. F., Inc., and chose the former. Therefore, plaintiff foreclosed the consideration of a judgment against D. F., Inc., by electing at the close of its own evidence to proceed only against defendant Danzig. Accordingly, judgment must be entered in favor of defendant D. F., Inc., as well as defendant Danzig.

ORDER
This matter is before the Court on certain objections by plaintiff to defendants' offer of portions of the deposition of David Urbanski, and on plaintiff's and defendants' contingent offers of additional portions of the deposition. It was stipulated at trial that these objections and offers would be taken with the case.
After consideration of the matter,
IT IS HEREBY ORDERED that plaintiff's objection to defendants' offer of certain testimony from pages 31, 32, 33, 34, and 37 of the deposition of David Urbanski be and is SUSTAINED.
IT IS FURTHER ORDERED that plaintiff's objection to defendants' offer of page 53, lines 3-17 of the deposition testimony of David Urbanski be and is OVERRULED.
IT IS FURTHER ORDERED that plaintiff's and defendants' offers of further deposition testimony of David Urbanski, which offers were contingent upon the Court's overruling plaintiff's objections to defendants' offer of the testimony on pages 31-37, be and are DENIED as moot.
NOTES
[1] These leases were guaranteed on behalf of TWSS, Inc. and TASS, Inc., by D. F. & Associates, a limited partnership, by its general partner, D. F. Enterprises, Inc., and the guarantee was signed by Isaac Danzig as President of D. F. Enterprises, Inc.
[2] See footnote 1, supra.
[3] The station on Woodville Avenue was apparently in a suburb of Toledo named Oregon.
[4] These findings are derived from plaintiff's requests for admissions filed November 26, 1980, and defendant D. F., Inc.'s answers thereto, filed December 9, 1980. Defendant D. F., Inc. admits therein that, "regardless of the issue on whose behalf you were acting," someone acting on its behalf ordered the gasoline products listed therein. The Court interprets the request for admission as asking D. F., Inc. whether one of its officers, agents, employees, or other person acting on its behalf, ordered the gasoline products indicated, leaving aside the issue whether D. F., Inc., was ordering the products on its own behalf or as an agent for another entity. Correspondingly, defendant D. F., Inc.'s answers are interpreted as admitting that it ordered the gasoline products indicated, without admitting that it was ordering products on its own account.
[5] Apparently, defendants' exhibit G in the Urbanski deposition consisted of the eight April, 1979 invoices, plus five invoices charging for unearned discounts taken on previous payments. See amended exhibit A to the deposition of Isaac Danzig.