**HAMILTON MUSIC, INC., a Missouri Corporation, Plaintiff-Respondent,**

v.

**GORDON A. GUNDAKER REAL ESTATE COMPANY, INC., et al., Defendants-Appellants.**

**Nos. 46099, 46110.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 24, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 8, 1984.

Application to Transfer Denied
April 16, 1984.

---

Vatterott, Shaffar & Dolan, St. Ann, for Gordon A. Gundaker Real Estate Co.

William R. Dorsey, Clayton, for Ozersky & Banks.

James W. Drese, Chesterfield, for Hamilton Music Inc.

PUDLOWSKI, Judge.

Appellants, Gordon A. Gundaker Real Estate Co., Inc. ("Gundaker") and Herbert Ozersky and Clay Banks d/b/a Wee Too, appeal from a judgment in a bench tried action in which Hamilton Music, Inc. ("Hamilton Music") sought to recover damages from them for breach of contract and fraud under a sublease. The trial court found for Hamilton Music and against the appellants on Count I for breach of the leasing contract and assessed damages of $14,617 and ruled for appellants on Count II for fraud. We affirm the liability of appellants Ozersky and Banks, modify the damages assessed against them and reverse as to appellant Gundaker.

Appellants Ozersky and Banks contest the trial court's finding that a leasing contract existed and its calculation of damages. Appellant Gundaker's principal assignment of error is the trial court's imposition of liability upon it under an agency theory for the allegedly wrongful acts of its employees Ozersky and Banks d/b/a Wee Too.

The facts are uncomplicated. In December 1977 Lee Hamilton, president of Hamilton Music, enlisted the services of Leo Underwood, a sales broker with Gundaker, to find a retail space for relocation of one of four St. Louis area music stores. No suitable sites available for commercial leasing were found. Some time later Underwood showed Hamilton a building at 11561 St. Charles Rock Road in Bridgeton, Missouri, owned by Mr. and Mrs. Nathan Jordan ("Jordan"), however, he explained the property was for sale, not for rent. Desirous of leasing the Jordan building, Hamilton himself endeavored to find a prospective purchaser from whom he could rent the property. He finally found an interested buyer, only to learn that a contract for the sale of the Jordan property had already been negotiated. Underwood disclosed the names of Ozersky and Banks as the interested buyers to Hamilton so that he could contact them about leasing the property.

Ozersky and Banks, licensed real estate salesmen engaged as independent contractors with Gundaker's commercial division, had formed a partnership known as Wee Too for the purpose of acquiring the Jordan property on St. Charles Rock Road in Bridgeton. They had learned of the property's availability through their association with the commercial division of Gundaker. Prior to Wee Too's negotiations, Gundaker itself had declined to purchase the property. Ozersky and Banks, through their partnership Wee Too, entered into an arrangement to procure the property from Jordan on or about February 1, 1978. The agreement between Wee Too and Jordan provided originally for a 90 day term lease, but was extended an additional 60 days. It required monthly payments of $1,800 per month with an option purchase price of $167,000. Based on this agreement, Banks and Ozersky in turn proceeded through Underwood to negotiate a lease on this property with Hamilton. Underwood prepared and gave to Banks and Ozersky a "proposed" lease on the Jordan property for Hamilton. Parties to this document captioned "COMMERCIAL LEASE" but, in effect, a sublease, were "WEE TOO" as "Lessor" and "HAMILTON MUSIC, INC." as "Lessee." The lease was for a five year term beginning February 1, 1978, and ending January 31, 1983, with an annual rental of $23,908 payable in installments of

$1,999.34 per month. Paragraph nine, one of the numerous typewritten provisions added to the standard form lease, provided: "This lease subject to acquisition of said property by Wee Too." The lease was dated February 1, 1978, and signed by the parties as "WEE TOO By: Clay M. Banks, Pres., Lessor" and "HAMILTON MUSIC, INC., By: Michael Hamilton, Lessee."

Upon signing the lease, Hamilton paid $6,000 for the first month's rent and security deposit as required in another provision of the lease. They moved in and occupied the premises from February 1, 1978, until the end of June, 1978. Little remodeling of the premises was done during Hamilton Music's occupancy. Hamilton paid Wee Too rent for March and April but did not deliver the check written for May rent to Wee Too because of later events. Sometime in late April, Jordan, still the owner of the leased premises, entered the building occupied by Hamilton Music. Upon seeing a large engineer's plan for remodeling the building, he advised Hamilton not to proceed with any remodeling because Wee Too had not purchased the property from him. Hamilton Music paid no further rent and moved out of the building by late June 1978.

Appellants' initial point concerns the clause "this lease subject to acquisition of said property by Wee Too." They label the clause a "condition precedent" to the lease and state that the condition was not met, since Wee Too did not buy the property. They conclude that nonoccurrence of the condition failed to create a valid lease to enable plaintiff to bring a contract action for breach of the lease. We rule against appellants on this point without addressing either the distinctions between conditions precedent and conditions subsequent or between remedies for their breach. We hold that appellants Ozersky and Banks d/b/a Wee Too had acquired the property within the meaning of the lease to create a valid and binding contract upon the parties.

 Generally, actions for breach of covenants in leases are governed by contract principles. *Kamada v. RX Group,*

*Ltd.,* 639 S.W.2d 146, 148[3] (Mo.App.1982). It is not necessary to resort to a rule of construction to ascertain the meaning of a lease where the intent of the parties may be gathered from the terms actually expressed in the writing itself. *In re Estate of Lewis,* 492 S.W.2d 385, 387 (Mo.App. 1973). *See L & K Realty Company v. R.W. Farmer Construction Co.,* 633 S.W.2d 274, 278[2], 280[9] (Mo.App.1982). Words used in a written lease are to be interpreted according to their usual and ordinary meaning. *Hargis v. Sample,* 306 S.W.2d 564, 568[2] (Mo.1957). The parties used the word "acquisition," not "ownership." The word "acquisition," is derived from "acquire" which is one of very broad meaning. "Acquisition" is comprehensive and includes "the act by which one acquires or procures the property in anything." Blacks Law Dictionary 29 (5th ed. 1979). "It (the word 'acquire') does not necessarily mean that title has passed." *Chief Freight Lines Co. v. Industrial Commission,* 366 S.W.2d 48, 53 (Mo.App. 1963). Citing *Seacrest Hotel, Inc. v. Director of Division of Employment Security,* 330 Mass. 226, 112 N.E.2d 813, the court in *Chief Freight Lines* stated:

> To own property one does not necessarily have to have an estate in fee simple. One having a lease estate may be said to have ownership of a sort. See Restatement: Property, § 10, comment c; Tiffany, Real Property, 3d Ed., § 2; Baltimore & Ohio Railroad v. Walker, 45 Ohio St. 577, 16 N.E. 475; Weinberg v. Baltimore & Annapolis Railroad, Md., 88 A.2d 575. It is not straining the concept of ownership unduly to say that a lessee 'owns' an interest in the subject matter of the lease and that when the lease is executed he has 'acquired' that interest. *Id.* at 54.

We are of the opinion that Wee Too had an interest in the property by its option to purchase contract, so that "the subject to acquisition" condition was met at the time of the contract's execution by the parties. Had the parties intended the leasing contract between Hamilton and Wee Too to be

conditioned upon Wee Too's ownership or successful financing, the language of the document should have reflected that intention. Expressions including "subject to financing" or "subject to ownership" are examples of proper professional draftsmanship. If, as appellants argue, the document executed was not a lease, but, instead, an agreement to lease, the parties should have been denominated "prospective lessor" and "prospective lessee." *See* 11 Am.Jr. Legal Forms 2d, "Leases of Real Property," § 161:18 for a model draft of an agreement to lease conditioned on the lessor's attaining ownership of the leasehold property.

Appellants also dispute the award of damages by the trial court. The trial court awarded Hamilton Music $14,617, the full amount of its prayer. The amount calculated was derived from the petition alleging the following damages: $2,640 for the move to the premises; $5,977.02 for March, April and May rent at $1,992.34 per month; and $6,000 for February's rent of $1,992.34 and a security deposit of $4,007.66. Ozersky and Banks contend that the proper measure of damages under a breach of contract theory is the difference in the rental value of the premises as provided for in the lease and the rental value of the premises as determined by what they would rent for in that neighborhood or comparable rentals in that neighborhood and that Hamilton Music presented no such evidence to the court. Gundaker avers that Hamilton Music's moving costs were not properly includable as either actual or consequential damages and that the damage assessment should have included a set-off for the reasonable rental value of the premises during Hamilton Music's occupancy.

Missouri follows the majority rule that compensation shall be given for such loss as may be the natural and direct consequences of the breach. Hamilton made expenditures in advance to enable him to have the enjoyment of the leased premises. These expenditures included the costs of moving to the leased premises. Hamilton Music's petition sought recovery for moving costs in the amount of $2,640. Wee Too should have reasonably foreseen that these expenses would be incurred by Hamilton Music in order to occupy the premises. We find the trial court properly included this expense in its damage award.

The lease provided for return of the security deposit upon termination of the lease. None of the appellants disputes its inclusion in Hamilton Music's measure of damages. The return of $4,007.66 for the security deposit was proper.

Prospective and lost profits, if supported by evidentiary proof, may be recoverable by a tenant wronged by his landlord's breach. *See Hargis v. Sample,* 306 S.W.2d 564, 569 (Mo.1957) and *Yaffe v. American Fixture, Inc.,* 345 S.W.2d 195 (Mo.1961). Hamilton, however, did not plead loss of profits, nor did the trial judge's damage award include an amount for these. Therefore, we need not address lost profits as a proper element of damages, since neither side proved or raised this issue.

Hamilton Music also was awarded recovery of rents it paid to Wee Too during its occupancy. All appellants dispute this rental reimbursement as a proper element of Hamilton Music's damages. Ordinarily, the principle of compensation for losses which are the natural, direct consequence of the breach will be satisfied by assessing the lessee's damages at an amount representing the difference between the actual value of the unexpired term and the rent reserved. *See Harrison v. Coleman,* 171 Mo.App. 633, 154 S.W. 456[1, 2] (Mo.App.1913) and 62 A.L.R. 1257, 1311 (1929). We have no evidence on the value of the unexpired term and the rent reserved. Additionally, during oral argument, respondent conceded he found no case law to support recovery of rent paid by Hamilton Music during its tenancy and opined the law was against him in that respect. We agree. We find no authority, excepting constructive evictions, permitting total recovery of rental payments to a ten-

ant for the landlord's breach during the period of time the tenant occupies the landlord's premises. The trial court improperly permitted the recovery of rental payments as a measure of Hamilton Music's damages.

■ Gundaker and Wee Too further suggest in their briefs that not only did Hamilton Music improperly recover its rental payments, but also that Hamilton Music owed them the amount of rent it withheld during its occupancy of the premises for May and June. Regardless of the merits of their arguments, in their pleadings appellants never sought this amount by way of their answer or any counterclaim. Just as we refuse to modify the award of Hamilton Music's damages for properly includable items (e.g. lost profits) for which it failed to pray, we cannot now give appellants on appeal what they might have been entitled to had they properly sought recovery at trial.

The final point raised concerns the issue of agency. Appellant Gundaker contests the finding of Gundaker's liability to Hamilton Music on the leasing contract. The trial court granted recovery to Hamilton Music against all appellants on Count I, a breach of contract, but denied recovery on Count II for alleged fraud and misrepresentation by appellants. We find insubstantial evidence to support any recovery by Hamilton Music on its muddled breach of contract theory as pleaded against appellant Gundaker.

■ A fundamental principle in agency law is that a disclosed principal is always liable on a contract entered into by an authorized agent where a valid contract has been entered into by an agent for his principal. *See Southern Pacific Transportation Company v. Continental Shippers Association, Inc.*, 485 F.Supp. 1313, 1319[9, 10] (W.D.Mo.1980). A third party generally has no action against an agent in a disclosed principal situation, since the contract is with the principal. *See Williams v. Cass*, 372 S.W.2d 156, 160–61 (Mo.App. 1963). Thus, under basic agency and contract principles, assuming Gundaker were

the agent for Banks and Ozersky d/b/a Wee Too and had signed the leasing contract with Hamilton for Wee Too, Hamilton would still have no cause of action against Gundaker on the contract where the existence and identity of Wee Too, a disclosed principal, was known to Hamilton, the third party. The possibility of recovery by Hamilton against Gundaker under this theory of liability is even more attenuated in the case at bar because Gundaker never entered into or signed the leasing contract.

■ The only possible theory upon which Hamilton could recover against Gundaker requires evidence establishing that Banks and Ozersky d/b/a Wee Too were the agents of Gundaker as a partially disclosed or undisclosed principal. This theory of liability is predicated on the general principle that either the agent (Wee Too) and the principal (Gundaker) are liable on a contract entered into by an authorized agent on behalf of a partially disclosed or undisclosed principal. *Empire Petroleum, Inc. v. D.F. & Associates*, 538 F.Supp. 615, 620 (E.D.Mo.1982). However, nothing in the evidence establishes that Wee Too was an agent for Gundaker.

Hamilton's own testimony acknowledged that his contacts were primarily through Underwood, a representative of Gundaker. Underwood had been contacted by Hamilton who was interested in leasing commercial property.

While Hamilton first sought out Gundaker to assist him in securing premises to let, Gundaker was never the agent for Hamilton Music. Despite Hamilton's perception to the contrary, neither Underwood's extensive contacts with Hamilton nor promises of assistance in securing a location for Hamilton Music created any agency relationship between them. It has been held that a broker employed to sell or lease real estate is the agent of the vendor-lessor, although the purchaser-lessee consulted the real estate agent about buying or leasing the land. 12 C.J.S. *Brokers* § 32 (1980).

Hamilton knew Gundaker was acting as an agent for Wee Too. The terms of the lease explicitly referred to Gundaker as an agent for the lessor to accept the initial rent and security payment. The lease provided for payment by the *lessor* of a 5% commission to Gundaker as its agent. Evidence revealed the initial check given by Hamilton Music to Wee Too was made payable to Gundaker Real Estate as called for in the lease and the notation on the check read "lease commission." The balance of the payment went to Wee Too. Hamilton knew that Wee Too was the lessor, that he was leasing the building from Wee Too as the disclosed principals, and that Gundaker "was not on the lease as a party to the lease." Hamilton's "feeling" that he was dealing with Gundaker is insubstantial evidence to find Gundaker liable on a contractual theory of recovery.

Hamilton contends, however, that Ozersky and Banks were acting as agents for Gundaker because Gundaker held their brokerage licenses and the partnership address for Wee Too was the Gundaker office address. This evidence is totally insufficient to establish an agency relationship. Ozersky and Banks, regardless of their usual relationship with Gundaker as agents or independent brokers, acted individually in an independent capacity. Their contractual liability on the lease cannot be imputed to Gundaker. Where a broker enters into a contract on his own behalf, his liability under the contract is that of a principal and is ordinarily the same as though he were not a broker. *Id.* at § 101. In this transaction Banks and Ozersky were acting for the Wee Too partnership to further their own financial interest. We conclude that no evidence supports the trial court's finding that Gundaker was a party to the lease.

We affirm as to appellants Ozersky and Banks on liability but modify the damages assessed against them to $6,647.66. We reverse the judgment outright in favor of Gundaker.

CRIST, P.J., and SIMON, J., concur.