**RELIANCE INSURANCE CO. OF ILLINOIS, Plaintiff,**

v.

**Carl J. WEIS, et al., Defendants.**

**No. 4:92CV296SNL.**

United States District Court, E.D. Missouri, E.D.

Dec. 18, 1992.

David O. Danis, Partner, Danis and Boyce, St. Louis, MO, Perry Kreidman, New York City, for Reliance Ins. Co. of Illinois.

Andrew M. Burns, Alan C. Kohn, Partner, Kohn and Shands, St. Louis, MO, for Carl J. Weis, Jr.

Doug Clements, pro se.

Gregory H. Wolk, Edwards and Singer, St. Louis, MO, for Myron Carpenter.

Martin M. Green, Partner, H. Todd Iveson, Jr., Green and Hoffmann, St. Louis, MO, for Plan Committee of Bank Bldg. and Equipment Corp. of America, in Liquidation.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiff has filed this declaratory judgment action seeking a declaration of its rights and obligations pertaining to a directors' and officers' liability policy it issued to a presently liquidated bankrupt corporation. Specifically, it seeks a declaration that the said policy does not provide coverage, pursuant to Endorsement 1 of the policy, for claims brought by the Plan Committee representative Miller against certain former officers of the bankrupt corporation (defendants Weis, Clements, and Carpenter). This matter is before the Court on the parties' cross-motions for summary judgment. Extensive pleadings have been filed in connection with these summary judgment motions.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

Plaintiff Reliance Insurance Co. is the insurer and provider of the policy in question to Bank Building and Equipment Corporation (BBC). Defendant BBC is a Delaware corporation (headquartered in St. Louis) now liquidated pursuant to Chapter 11 proceedings. Defendant Clements was President and General Manager of the Loughman Division of BBC and the Loughman Corporation, a wholly-owned subsidiary of BBC. Defendant Weis was the Chief Executive Officer of BBC from 1983 through April 1989. Defendant Carpenter was Chief Financial Officer of BBC from 1983 through December 1989.

On April 30, 1990 BBC filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code. On July 22, 1991 a liquidation plan (named the First Amended Joint Plan of Liquidation of BBC and known simply as the "Plan") filed on behalf of BBC and two of its subsidiaries was approved by the Bankruptcy Court in St. Louis. Pursuant to the Plan, the Plan Committee of BBC was formed to imple-

ment the Plan. According to the Plan, all causes of action belonging to the bankruptcy estate (of BBC) vest and shall be brought in the name of the Plan Committee. Richard Miller was appointed by the Plan Committee as Liquidation and Distribution Agent to act as the representative of the Plan Committee.

In November 1991, after an investigation initiated by the Plan Committee was concluded, Miller brought suit against defendants Weis, Carpenter, and Clements in the Circuit Court for the County of St. Louis. The suit was filed by the Plan Committee alleging breach of fiduciary duty and negligence in the defendants' management of BBC. The suit seeks recovery, for the estate of BBC, of over $50,000,000.00 in actual and punitive damages.

Notice of the civil action was given to Reliance, which had issued a directors and officers' liability policy to BBC. The defendants requested coverage for themselves with regard to the state court action. Reliance denied coverage for the state court action (hereinafter referred to as Plan Committee action) pursuant to Endorsement 1 of the policy. The pertinent portions of the policy read as follows:

> The insurer will pay on behalf of the Directors and Officers all loss which the Directors and Officers or any of them shall become legally obligated to pay as a result of any claim or claims first made during the policy period against the Directors and Officers, individually or collectively, for a Wrongful Act.
>
> (§ IA)
>
> Wrongful Act is defined as: any actual or alleged ... neglect or breach of duty by the Directors and Officers in the discharge of their duties, individually or collectively, or any matter claimed against them solely by reason of their being Directors or Officers of the Company.
>
> (§ IVC)
>
> It is agreed that Section V "EXCLUSIONS" shall be amended by the following:
>
> (the Insurer shall not be liable to make any payment for loss in connection with

any claim made against the Directors and Officers:)

> by or on behalf of a Director and/or Officer or by or on behalf of the Company, except for stockholder(s) derivative actions brought by a shareholder(s) of the Company other than a Director and/or Officer.
>
> (§ V and Endorsement 1)
>
> "Company" is defined in the policy as "the Company shown in Item A of the Declarations and any subsidiary or subsidiaries as hereinafter defined."
>
> (§ IVA) (BBC is the only "company" named in Item A.)

Plaintiff Reliance claims that under Endorsement 1 (an exclusion clause commonly referred to as an "insured v. insured" exclusion clause), plaintiff is not liable for payment of any losses in connection with any claim made against any Director or Officer brought *by or on behalf of the Company.* Plaintiff contends that the Plan Committee is asserting claims on behalf of BBC against defendants Weis, Carpenter, and Clements. Consequently, plaintiff argues that the Plan Committee action falls within the "insured v. insured" exclusion clause of Endorsement 1. Defendants provide three (3) theories as to why Endorsement 1 is not applicable. They argue 1) the exclusion clause is ambiguous, therefore it must be construed in favor of the insured (and not the insurer plaintiff); 2) the Plan Committee action is not brought on behalf of BBC, but rather brought by Miller, as agent for the Plan Committee, on behalf of the bankruptcy estate of BBC (a separate legal entity); and 3) the Plan Committee action is in reality a shareholders derivative action and therefore not within the exclusion of Endorsement 1.

■ Before embarking on a somewhat difficult road to finding an answer to the issues raised by the summary judgment motions, the Court must first address the preliminary jurisdictional issue of what law controls. This case presents itself with two levels of analysis. On one level, this is a case about interpreting a clause in an insurance contract; consequently state law will control, but which state? Secondly,

interpretation of the clause in question involves application of bankruptcy law since the insured has been liquidated under Chapter 11 of the United States Bankruptcy Code and its affairs are being managed under Chapter 7 of the Code.

■ The plaintiff agrees to application of Delaware law for purposes of the motions. Defendant Carpenter agrees also to application of Delaware law. Defendant Weis appears to be non-committal as to which state law he favors. Both Missouri and Delaware apply the "most significant relationship" test of Section 145 of the *Restatement (Second) of Conflicts* (1971) to resolve conflict of laws issues regarding the interpretation and validity of contracts. *Empire Petroleum v. D.F. & Associates, Inc.*, 538 F.Supp. 615, 619 (E.D.Mo.1982); *The Travelers Indemnity Co. v. Ben E. Lake, et al.*, 594 A.2d 38 (Del.1991).

■ However, in the present case, the insurance policy in question clearly states that Delaware law shall control in cases regarding interpretation and application of the policy. Section VI, subsection J. The federal rule on the enforceability of forum selection clauses requires that the clause should control and be enforced unless it can be shown that the clause is unreasonable and unjust, or that the clause is invalid because of fraud or overreaching, or that the suit is broader than the intended scope of the clause. *See, Carnival Cruise Lines, Inc. v. Shute*, — U.S. —, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Medicine Shoppe International v. Browne*, 683 F.Supp. 731, 733 (E.D.Mo.1988). None of the defendants have raised any one of these contentions and the Court finds that none are applicable here, therefore this Court elects to apply Delaware law as to the interpretation and validity of the insurance policy at issue, especially with regard to Endorsement 1.

■ Under Delaware law, plaintiff Reliance has the burden of proving that Endorsement 1 applies in the present situation in order to avoid coverage. *New Castle County v. Hartford Accident & Indemnity Co.*, 933 F.2d 1162, 1163 (3rd Cir.1991) (commonly referred to as *New Castle V*).

Generally, an insurance contract or policy is construed strongly against the insurer, and in favor of the insured, unless there is some ambiguity in the policy language. *New Castle County v. Hartford Accident & Indemnity Co.*, 970 F.2d 1267, 1270 (3rd.Cir.1992) (commonly referred to as *New Castle VII*); *Aetna Casualty & Surety v. Kenner*, 570 A.2d 1172, 1174 (Del. 1990); *Hallowell v. State Farm Mutual*, 443 A.2d 925, 926 (Del.1982); *Grissom v. Nationwide Mutual Ins.*, 599 A.2d 1086, 1088 (Del.Ch.1991). When the language of an insurance policy is clear and unequivocal, the parties will be bound by its clear meaning. A Delaware court will not construe or twist the words in order to create an obligation which does not exist or to which the parties had not assented. *Kenner*, 570 A.2d at 1174; *Hallowell*, 443 A.2d at 926; *Grissom*, 599 A.2d at 1088. However, if ambiguity does exist, it must be construed against the drafter of the policy, i.e. the insurer. *Hallowell*, 443 A.2d at 926; *Grissom*, 599 A.2d at 1088.

Simply because the parties may suggest alternative interpretations of particular contract language, does not automatically establish an ambiguity. An ambiguity exists only when the contract language is subject to two or more reasonable interpretations. *New Castle VII*, 970 F.2d at 1270; *Kenner*, 570 A.2d at 1174; *Hallowell*, 443 A.2d at 926; *Grissom*, 599 A.2d at 1088. "Because ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate, absent a showing that the term has acquired a special meaning the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner." *New Castle VII*, 970 F.2d at 1270; *see also, New Castle V*, 933 F.2d at 1188; 2 Couch, Couch on Insurance 2d., § 15:17 at 177–78, 190 (Rhodes rev. ed. 1984). All relevant provisions of the insur-

ance policy must be examined and read in concert, rather than a single passage in isolation. *Kenner*, 570 A.2d at 1174; *Grissom*, 599 A.2d at 1088.

In the instant matter, the parties disagree as to the interpretation and intent of the language contained in Endorsement 1 of the policy. In particular, the parties dispute the meaning of the phrase "by or on behalf of the Company". The parties agree that the Company is BBC; they also agree that the Plan Committee action was not brought "by the Company" since BBC has been liquidated; what they don't agree on is whether the Plan Committee action was brought "on behalf of the Company".

This issue is complicated by the fact that BBC was liquidated in accordance with Chapter 11 of the United States Bankruptcy Code and its affairs are now being managed in accordance with Chapter 7 of the Code. The phrase "on behalf of the Company" takes on special meaning due to the bankruptcy. It is this Court's considered opinion that in order to assess whether or not ambiguity exists with regard to Endorsement 1, the phrase in question must be construed within the realm of bankruptcy law.

The Court has carefully reviewed the caselaw cited by the parties. Unfortunately, these cases are not extremely helpful in providing guidance to the Court. The majority of cases cited deal with exclusion clauses similar to the present one, however, the interpretation and application of the clause is limited to facts involving bank failures. The principles espoused are restricted to the unique situation of the FDIC or the RTC taking control of a failed bank. The present situation deals with a bankrupt corporation no longer physically or legally in existence as it had been before the bankruptcy. The Court is constrained to draw from the basic tenets of insurance law and bankruptcy law in order to resolve this matter.

The parties contend that other provisions in the policy support their respective positions. There are other provisions in the policy that address the parties' rights in the event of the bankruptcy of BBC. Section VIII(c) provides that plaintiff Reliance's coverage shall continue unabated in the event of BBC's bankruptcy. Endorsement 4 states that the applicable officer and director retention (under Item D) shall be reduced from $150,000.00 to $2,500.00 if the insured company (BBC) becomes a debtor under Chapter 11 of the Bankruptcy Code and is unable to reimburse its officers for any liability covered by the policy. The parties argue that the existence of these other "bankruptcy" provisions in the policy are significant to the Court's interpretation and application of Endorsement 1. Plaintiff Reliance contends that since the parties' rights in the event of bankruptcy are expressly addressed under different provisions of the policy, if Endorsement 1 was also intended to address the parties' rights in the event of bankruptcy, i.e. that Endorsement 1 was not applicable, Reliance would have said so in the clause. Consequently, Endorsement 1 is applicable in the present case. The defendants, on the other hand, argue that Reliance could have expressly excluded claims by the bankruptcy estate of BBC but elected not to do so. They contend that since the policy does refer to parties' rights in the event of bankruptcy elsewhere, the failure to address the issue in Endorsement 1 or in the definition of "Company" demonstrates Reliance's intent not to include actions by the bankruptcy estate in Endorsement 1, i.e. Endorsement 1 not applicable in the present case.

Both sides present very plausible arguments to the Court. However, the Court believes that since Reliance is the drafter of the policy and did address the issue of bankruptcy elsewhere in the policy, then it appears reasonable to conclude that if Reliance had wanted to expressly address the issue of bankruptcy in Endorsement 1, it would have done so. This is simply an observation of the Court to be considered in making its ultimate decision in this matter.

As stated before, the issue central to this case is what is meant, under bankruptcy law, by the phrase "on behalf of the Company". Plaintiff Reliance argues that liquidated BBC is now nothing more than a

"bankruptcy estate" and as such encompasses all legal and equitable interests and property held by BBC as of the date of filing the bankruptcy petition. Reliance further argues that the Plan Committee, as representative of the bankruptcy estate, can only bring claims belonging to BBC, thus the state civil action is "on behalf of the Company" and is excluded from coverage pursuant to Endorsement 1. Defendants, on the other hand, argue that the filing of a bankruptcy petition divests the debtor of all rights in the property of the estate and vests all such rights in the trustee. They further argue that the trustee is a newly created juridical entity with his/her/its own rights and duties and subject to the control of the bankruptcy court. The defendants aver that Miller and the Plan Committee, are akin to a trustee, and thus are working not for BBC but rather on behalf of the bankruptcy estate for the sole benefit of the creditors and shareholders of the liquidated BBC.

What is an estate under the bankruptcy laws? What purpose does the Plan Committee serve? The answers to these two questions is paramount to the Court's resolution of the problem before it.

■ The bankruptcy estate is created upon the filing of the petition for bankruptcy; as in this case pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Section 541 of the Code establishes that the filing of the bankruptcy petition creates an estate and defines which property comprises the estate. Subsection 541(a)(1) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." *See, In re Ozark Restaurant Equipment Co., Inc.,* 816 F.2d 1222, 1224–25 (8th Cir.1987). This includes all choses in action and claims by the debtor against others. It is significant that the definition of the estate embraces causes of action belonging to the *debtor* at the time of the commencement of the action. *Ozark Restaurant,* at 1225. Thus, under the provisions of Section 541, the estate succeeds to any right of action a debtor corporation may have to recover damages for miscon-

duct, mismanagement, or neglect of duty by a corporate officer or director, and the trustee has the authority to bring such actions on behalf of the debtor corporation. *Ozark Restaurant,* at 1225. However, a trustee (or as in this case, a liquidation and distribution agent), stands in the shoes of the debtor corporation in prosecuting a cause of action belonging to the debtor, and where the applicable state law makes such obligations or liabilities run to the corporate creditors personally, rather than to the corporation, such rights of action are not assets of the estate pursuant to Section 541(a) that are enforceable by the trustee or liquidation agent. *See,* 4 Collier on Bankruptcy, § 541.10[8] (15th ed. 1986).

As regards insurance policies, directors' and officers' liability (DOL) policies or otherwise, some courts have found that the policies are part of the estate, although the proceeds may not be. *In re Daisy Systems Securities Litigation,* 132 B.R. 752 (N.D.Cal.1991); *In re Louisiana World Exposition,* 832 F.2d 1391 (5th Cir.1987); *In re Minoco Group of Companies, Ltd.,* 799 F.2d 517 (9th Cir.1986). In *Louisiana World Exposition,* the Fifth Circuit took pains to point out an important factual and procedural distinction among suits where the directors' and officers' liability coverage was at issue. It noted that "[h]ere, the suit calling the liability coverage into play is one brought by the Committee on behalf of the debtor, LWE. The object of that action is to enlarge the debtor's estate." *Id.,* at 1400. The Court noted that this distinguished its case from other cases in which plaintiffs were not suing for the debtor's benefit but rather for their own personal benefit. *Id.,* at 1400.

■ In the present case, there is no dispute that BBC had a right of action, such as the pending state Plan Committee action, at the time of the filing of its bankruptcy petition. Under the Code, this right of action became part of the bankruptcy estate. Furthermore, none of the parties have cited any Delaware caselaw which makes an action, such as the pending state Plan Committee action, personal to the corporate creditors rather than the corpora-

tion itself. The claims asserted in the Plan Committee action could have been brought by BBC and although they were not, "the estate's legal and equitable interests in property rise no higher than those of the debtor." *In re Louisiana World Exposition*, at 1399, citing *In re Gagnon*, 26 B.R. 926, 928 (Bankr.M.D.Pa.1983). It is clear that whenever a cause of action "belongs" to the debtor corporation, the trustee, or in this case, the liquidation and distribution agent, simply has the authority to pursue that cause of action. *See, Ozark Restaurant*, 816 F.2d at 1225.

This brings us to the second question as to the role that the Plan Committee (and to a smaller degree, the liquidation and distribution agent Miller) plays in BBC's bankruptcy. The answer to this inquiry lies in the terms of the Liquidation Plan and the Disclosure Statement filed in BBC's bankruptcy case.

In the First Amended Joint Plan of Liquidation of BBC, confirmed by the Bankruptcy Court in July 1991, the Liquidation and Distribution Agent and the Plan Committee are defined as follows:

1.20 **Liquidation and Distribution Agent** shall mean the individual appointed by the Plan Committee, who shall on the Confirmation Date be vested with authority to administer all the property of the Consolidated Debtors and their estate including causes of action and all proceeds from the liquidation of such property and who shall have the right and duty to receive, reinvest, and distribute all such property in accordance with the Plan and under the supervision and direction of the Plan Committee.

1.31 **Plan Committee** shall mean the Committee of three individual creditor representatives, selected on behalf of BBC by the BBC Unsecured Creditors Committee appointed in BBC's case pursuant to 11 U.S.C. § 1102(a)(1), and on behalf of MBI and API by each Debtor from its solicitation of its list of twenty largest unsecured creditors, excluding those which have a conflict of interest, which Plan Committee shall function as of and after the Confirmation Date.

BBC Liquidation Plan, Article I. Under Article XII of the Liquidation Plan (Means For Execution of the Plan), the Plan contemplates not only liquidation but also "the prosecution of any and all claims or causes of action held by the estates of the Consolidated Debtors by the Plan Committee ...". Article XII, Subsection 12.1. Article XII goes on to discuss the appointment of the Liquidation and Distribution Agent and states that "[o]nce appointed, the Plan Committee, by the Liquidation and Distribution Agent shall be responsible for prosecuting and defending any and all claims and causes of action relating to the Consolidated Debtors' estate, including, without limitation (1) claims of each estate against any Person (including, without limitation, any claims or causes of action arising under Sections 544, 545, 547, 548, 549, and 553(b) of the Bankruptcy Code) ...". Article XII, Subsection 12.3.

Article XIV of the Liquidation Plan describes the Plan Committee in detail and outlines its duties and responsibilities. Subsection 14.1 stipulates that the Plan Committee shall have the same authority to act for the Consolidated Debtors as a board of directors for each of the Consolidated Debtors. It goes on to state that following confirmation, "all causes of action belonging to any of the Consolidated Debtors shall vest and be brought in the name of the Plan Committee, on behalf of the particular Consolidated Debtor or Debtors in which the cause of action had been previously vested." With regards to the creditors and shareholders, Subsection 14.7 states that the Plan Committee "shall act in a fiduciary capacity ...".

Finally, Article XVIII discusses retention of jurisdiction by the Bankruptcy Court. Subsection 18.1(a) states that the Bankruptcy Court shall retain jurisdiction in order for and to enable "the Plan Committee and the Liquidation and Distribution Agent, for and on behalf of the estates, to ... determine the extent that the Directors and Officers Liability Policy of Insurance provides coverage for the acts or omissions of the officers and former officers of BBC, and to recover any preferences, transfers, assets or damages to which the estates of

the Consolidated Debtors may be entitled ...".

The First Amended Disclosure Statement (filed in conjunction with the Liquidation Plan) addresses the purpose and goals of the Plan Committee and the Liquidation Plan.

In Section VI. PLAN COMMITTEE, the Disclosure Statement notes that "[b]ecause the Plan Committee will consist of creditors of BBC, API, and MBI, it will be able to provide broad based representation for the Consolidated Debtors."

In Section VII. THE PLAN OF LIQUIDATION, the Disclosure Statement points out that once the business affairs of the Consolidate Debtors is liquidated, "the only continuing affairs of the Consolidated Debtors will be the pursuit of additional recoveries through legal actions that are pending or instituted in accordance with the Plan." The Consolidated Debtors affairs are to be monitored and supervised by the Plan Committee. The Agent is authorized to take whatever legal actions are necessary "in the name of and on behalf of the Consolidated Debtors." The Plan is to operate like a Chapter 7 liquidation under the Bankruptcy Code and the "duties of the Chapter 7 Trustee are executed by the Plan Committee and the Agent." Finally, the "overriding goal and purpose of this Plan is speedy, efficient and economical liquidation of the Consolidated Debtors and the distribution of all available funds to creditors."

It is this Court's considered opinion that pursuant to the Bankruptcy Code, the Liquidation Plan, the Disclosure Statement, and the relevant caselaw, whatever right of action BBC had against its former officers for mismanagement and breach of fiduciary duty was transferred to the bankruptcy estate upon the filing of its bankruptcy petition. Once BBC was liquidated, Agent Miller and the Plan Committee were obligated to pursue BBC's right of action in order to recover assets for BBC's estate. The purpose of the pending state court action is to recover all available funds for distribution to BBC's creditors. It is clear that the pending state court action was filed on behalf of BBC and its estate, al-though the benefits sought may eventually inure to the creditors. For purposes of this litigation, there is no significant legal distinction between BBC and its bankruptcy estate.

■ With regard to the defendants' assertion that the pending state court action is in reality a shareholder's derivative action, the Court finds this contention meritless. None of the prerequisites, under Delaware law, for filing a shareholder's derivative action have been met. *See*, Chancery Court Rule 23.1, DEL.CODE ANN.; Delaware Corporation Law Annotated, § 327. Nowhere in the state court complaint is it stated that the claims are derivatively asserted on behalf of BBC's shareholders. The Court finds that the pending state court action is not a shareholder's derivative lawsuit.

The Court concludes that the pending state court action was filed by Agent Miller and the Plan Committee on behalf of BBC and its estate against defendants Weis, Carpenter, and Clement for mismanagement .and breach of fiduciary duties. It seeks over 50,000,000.00 in actual and punitive damages. Any award of damages would go into the estate for future distribution to creditors.

There is no ambiguity in the language contained in Endorsement 1. Any lawsuit brought on behalf of BBC against its former officers falls within this exclusion clause. Such a lawsuit is presently pending in the Circuit Court for the County of St. Louis; therefore, Endorsement 1 is applicable. Coverage for defendants Weis, Carpenter, and Clements is excludable under the policy.

Summary judgment will be granted for plaintiff Reliance and against defendants Agent Miller, Plan Committee, Weis, Clements, and Carpenter on the merits of plaintiff's declaratory judgment complaint.