David **BROWN** and Jo Ann Brown,
Plaintiffs–Respondents,

v.

**MIDWEST PETROLEUM COMPANY, a
Missouri Corporation, Defendant–
Appellant.**

No. 60598.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 31, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
April 29, 1992.

tion claiming defendant damaged the property by failing to maintain it as required by the lease.

In its sole point on appeal, defendant claims that there was no evidence presented from which the jury could ascertain damages. Specifically, defendant claims that plaintiffs failed to establish the diminution in fair market value attributable to waste committed by defendant's breach of the lease. We agree.

Waste is the failure of a tenant to exercise ordinary care in the use of the leased premises or property that causes material and permanent injury thereto over and above ordinary wear and tear. *Lustig v. U.M.C. Industries, Inc.*, 637 S.W.2d 55, 59 (Mo.App.1982). In an action for waste, the measure of damages is generally the difference between the fair market value of the realty at the end of the lease, had no waste occurred, and the fair market value of the property in its damaged condition. *See Lipton Rlty. v. St. Louis Housing Authority*, 705 S.W.2d 565, 569 (Mo.App. 1986); *See also* MAI 4.02 [1980 Revision]. In contrast, the cost of repair is the proper measure of damages for waste only when the cost of repair is small in relationship to the property as a whole and when the amount of the repair is easily ascertained. *Lipton Rlty.*, 705 S.W.2d at 569.

Here, Mr. Brown, the owner of the building, gave the following testimony regarding damages:

Q Let me ask you again. You've told us that you believe the reasonable market value of your property immediately prior to the beginning of this lease was three hundred and thirty-five thousand dollars; correct?

A Including land and building and everything, yes.

Q Yes, sir. Let me ask you what your opinion is as to the reasonable market value of the property immediately after

Ziercher & Hocker, P.C., George J. Bude, Margaret L. van Dijk, Clayton, for defendant-appellant.

Robert E. Morley & Associates, P.C., Robert E. Morley, O'Fallon, for plaintiffs-respondents.

CRANDALL, Judge.

Defendant, Midwest Petroleum Company, appeals from a judgment in favor of plaintiffs, David and Jo Ann Brown, for $75,000 [1] following a jury trial, in an action for waste under a lease. We reverse and remand.

The evidence, viewed in a light most favorable to the verdict, shows that in January of 1984, defendant signed a lease to rent a commercial property from plaintiffs for use as a gas station, convenience store and video game room. Defendant operated the property from January of 1984 until May of 1987. Defendant continued to pay rent on the property until the end of the lease in January of 1989.

After retaking possession, plaintiffs found the property damaged and unfit for commercial use. Plaintiffs brought this ac-

---

**1.** The jury awarded $25,000 in damages. The trial court trebled this amount under § 537.420, RSMo (1986).

the lease ended considering the damaged condition of the premises.

    *     *     *     *     *     *

A  I'd say it was about two hundred and sixty thousand on January 15th, '89.

Q  So there was a differences of about seventy-five thousand dollars?

A  Yes, sir.

    *     *     *     *     *     *

Q  What is your opinion as to the difference in the reasonable market value strictly attributable to the lease and the use of the property by Midwest Petroleum Company?

A  To the damage, the physical damage to the building?

Q  Yes.

A  And the parking lot?

Q  Yes.

A  Yes.

Q  And what's the dollar amount of that?

A  Fifty thousand dollars, approximately.

    *     *     *     *     *     *

### CROSS–EXAMINATION

    *     *     *     *     *     *

Q  What theory of valuation did you utilize in determining that the property was worth two hundred and sixty thousand dollars?

A  Well, it was a combination of appraised, what the property was appraised at.

Q  Appraised by whom?

A  An appraisal company.

Q  Oh, you didn't do it yourself? You just looked at somebody else's appraisal?

A  You're interrupting. I said it was a combination of looking at an appraisal, looking at how much material and time I put into it. I built the building. I know what I spent on it and I had a good idea of what it cost and what it would cost to redo what I had already done.

    *     *     *     *     *     *

Q  Did you utilize any other evaluation or theory of evaluation for real estate values such as the income approach?

A  No.

Q  You indicated you did not use a comparable approach, either; did you?

A  I'm not sure what a compare approach is.

Q  Where you would go out and look at comparable properties, types of buildings similar to yours.

A  I was just looking to get the damage repaired. I don't know why I would go out and look at other buildings. I just had wanted to get my building repaired.

■ Mr. Brown testified that the fair market value of the property that was subject to the lease between plaintiffs and defendant decreased $50,000 due strictly to defendant's actions. However, on cross-examination, Mr. Brown conceded that the basis for determining this decrease in market value was the cost of repairing the damage to the building. Because the cost of repairs was significant in relationship to the cost of the building and, therefore, not the proper measure of damages, the trial court gave a withdrawal instruction to the jury to disregard all evidence of damage based on the cost of repairs. Thus, the jury could not consider this testimony as a measure of damages.

The jury was left with evidence presented through Mr. Brown's testimony of the diminution in value of the property between January of 1984 and January of 1989 from which to assess damages.[2] The diminution in value over that five year period could have been caused by several factors including, but not limited to, a general decline in the value of real estate, a decline in vehicular traffic in the area, increased regulation affecting the operation of the property, normal deterioration and/or waste. In addition, there are no compensable damages to the owner of the property until the termination of the lease. It is at that time

---

**2.** Plaintiff did present an additional witness who testified about the cost of repairing the damage caused by defendant. However, as with the portion Mr. Brown's testimony that was based on cost of repair, the trial court's withdrawal instruction prohibited the jury from considering this testimony.

the owner is entitled to possession of the property and the damages, if any, are measured. Because plaintiffs presented no evidence as to the fair market value of the property in January of 1989 without the damage caused by plaintiff, it was not possible for the jury to determine the diminution in fair market value related strictly to the abuse of the property by defendant. Thus, the judgment of the trial court was not supported by the evidence. Defendant's point is granted.

The judgment of the trial court is reversed and the cause remanded.

GRIMM, P.J., and PUDLOWSKI, J., concur.