David BRIZENDINE, Respondent,

v.

Nora Lee CONRAD, Appellant.

No. SC 83719.

Supreme Court of Missouri,
En Banc.

April 9, 2002.

Lee R. Hardee, III, F. Russell Peterson, Overland Park, Kansas, for Appellant.

Timothy T. Stewart, Dale T. Smith, Jefferson City, for Respondent.

LAURA DENVIR STITH, Judge.

David Brizendine brought suit for treble damages under Missouri's anti-waste statute, section 537.420, RSMo 2000, against Nora Lee Conrad, his former tenant under a written lease-purchase agreement ("Agreement"). Ms. Conrad appeals the trial court's $33,760.35 judgment in favor of Mr. Brizendine, alleging that a $15,000 liquidated damages clause in the Agreement was his only remedy and that it waived Mr. Brizendine's right to sue for waste under the statute.

This Court affirms the judgment for Mr. Brizendine. Section 537.420 provides for treble damages for waste committed by a tenant for a term of years, such as Ms. Conrad, unless the tenant is given a special license in writing to commit waste. Neither the liquidated damages provision nor other provisions of the Agreement constituted a special license to commit waste. To the contrary, the Agreement required Ms. Conrad to return the property in good condition, absent ordinary wear and tear, and did not permit improvements or changes to the property by Ms. Conrad. Consequently, Mr. Brizendine was entitled to sue under the statute for treble damages for waste. Ms. Conrad was not entitled to a set-off of the $15,000 deposit she made with the Agreement because she did not plead set-off below, include it in her motion for new trial, or ask for such relief in her point relied on, and cannot request such relief for the first time on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Conrad and Mr. Brizendine entered into the Agreement by which he leased to her, for 12 months, a low-income apartment-office-storage complex building in the central business district of Jefferson City beginning on October 1, 1997, and

expiring on September 30, 1998. The sale of the property was to be concluded at the end of the lease. Paragraph 5 of the Agreement required Ms. Conrad to pay $15,000 at the execution of the Agreement, which would be credited against the purchase price when the sale was completed and all conditions under the Agreement were satisfied.

The Agreement obligated Ms. Conrad to assume several duties, such as to manage the property by collecting rents, to provide all trash pickup for the premises, to use the property as residential and commercial property unless otherwise authorized by the written consent of Mr. Brizendine, to keep the grass "neatly mowed," to maintain the premises in good condition and to surrender it "in the same condition as received," and to arrange for and pay for all utilities.

In paragraphs 3(c) and (f) of the Agreement, Ms. Conrad also covenanted and agreed to maintain and repair the property as follows:

(c) To maintain in good condition all interior and exterior surfaces and to do all interior decorating and maintenance at her own expense. It is agreed that all costs for maintenance and repair of the premises and mechanical apparatus located thereon (including replacement) shall be borne by the Lessee during the term of this Agreement. After execution, all costs of maintenance shall be at the Lessee's expense.

. . . .

(f) If for any reason Lessee fails to purchase the property, she agrees to surrender it to Lessor in the same condition as received, ordinary wear and tear excepted.

Paragraph 14 of the Agreement provided that the $15,000 that Ms. Conrad gave to Mr. Brizendine at the beginning of the lease term would be retained as liquidated damages if Ms. Conrad failed to fulfill her obligations under the Agreement:

14. In the event Lessor shall perform his part of this agreement or shall tender performance thereof, and Lessee fail to perform her part, then the sum of Fifteen Thousand Dollars ($15,000) paid herewith shall be retained by Lessor as liquidated damages, it being agreed that actual damages are difficult, if not impossible, to ascertain. However, Lessor reserves the right to seek specific performance of this agreement.

At the end of the lease term, Ms. Conrad advised Mr. Brizendine that she had decided not to purchase the property because it was "too much maintenance, too much upkeep." Mr. Brizendine informed Ms. Conrad that the property was not in acceptable condition under the Agreement because it had extensive damage, not merely normal wear and tear.[1] While Ms. Conrad contested Mr. Brizendine's claims about the condition of the property, he presented evidence of a dozen instances of damage, ranging from damage to the floors, walls, and ceilings to damage to heating units, plumbing, and common ways. He also discovered that many units were infested with roaches.

At the time the parties entered into the Agreement, the purchase price agreed to was $140,000. When the property was tendered back to Mr. Brizendine, the cost to repair the damage done to it was $30,335. Mr. Brizendine indicated that,

1. Ms. Conrad does not raise any issue on appeal as to denial of her counterclaim; therefore, that aspect of the judgment is affirmed without further discussion.

rather than investing this sum of money to repair the property, and then trying to sell it again, he took an offer of $90,000 for the property from a new buyer and then filed suit against Ms. Conrad under a variety of theories of damage. Ultimately, he dismissed all claims except the one for statutory waste. Ms. Conrad filed a counterclaim.

At trial, Mr. Brizendine presented evidence that Ms. Conrad mismanaged the property by failing to screen tenants, failing to repair the property and keep it clean, and otherwise failing to actively manage the property. The trial court heard all the evidence, found in favor of Mr. Brizendine and awarded damages for waste in the amount of $11,253.45, based on the cost of repair, which the court then trebled to $33,760.35 pursuant to section 537.420. The court also ruled in favor of Mr. Brizendine on Ms. Conrad's counterclaim for damages she alleged due to Mr. Brizendine's refusal to immediately accept her tender of the property. Following opinion by the Court of Appeals, this Court granted transfer. Mo. Const. article V, section 10.

## II. STANDARD OF REVIEW

The decision of the trial court will be affirmed on appeal unless no substantial evidence supports it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Searcy v. Seedorff*, 8 S.W.3d 113, 115–116 (Mo. banc 1999); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This Court "defers to the trial court as the finder of fact in determinations as to whether there is substantial evidence to support the judgment and whether that judgment is against the weight of the evidence, even where those facts are derived from pleadings, stipulations, exhibits and depositions." *Business Men's Assur. Co.*

*v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999).

"The power to set aside a trial court's judgment on the ground that it is against the weight of the evidence should be exercised with caution and with a firm belief that the decree or judgment is wrong. .... In reviewing a contention that the evidence is insufficient, the evidence is viewed in the light most favorable to the verdict, and deference is accorded to the trial court's assessment of credibility." *Seedorff*, 8 S.W.3d at 116 (internal citations omitted).

## III. ANALYSIS

### A. A Liquidated Damages Clause Does Not Automatically Waive a Claim for Statutory Waste

Mr. Brizendine submitted his case under section 537.420, which states: If any tenant, for life or years, shall commit waste during his estate or term, of anything belonging to the tenement so held, *without special license in writing so to do, he shall be subject to a civil action for such waste,* and shall lose the thing wasted and *pay treble the amount* at which the waste shall be assessed. Section 537.420 thus "mandates the trebling of damages for waste when a tenant for life or years commits waste to the tenement." *Greeson v. Ace Pipe Cleaning, Inc.*, 830 S.W.2d 444, 448 (Mo.App. W.D. 1992). "[T]he measure of damages is generally the difference between the fair market value of the realty at the end of the lease, had no waste occurred, and the fair market value of the property in its damaged condition." *Brown v. Midwest Petroleum Co.*, 828 S.W.2d 686, 687 (Mo.App. E.D.1992). *See also* MAI 4.02.

A tenant is not liable for waste under the statute, however, if the tenant has been given a "special license" in writing to commit waste. Sec. 537.420. Ms. Conrad does not contend that she was

specifically given a special license to commit waste, but rather contends that the existence of a special license can be implied from the presence in the lease of the $15,000 liquidated damages clause. As noted earlier, that clause states, "[i]n the event Lessor shall perform his part of this agreement . . . . and Lessee fail to perform her part, then the sum of [$15,000] . . . . shall be retained by the Lessor as liquidated damages, it being agreed that actual damages are difficult, if not impossible, to ascertain."

Ms. Conrad argues that this clause constituted a waiver of the right to sue for statutory treble damages for waste.[2] Alternatively, she argues, by electing to retain the $15,000 she deposited with him at the beginning of the lease period, Mr. Brizendine elected to enforce his right to liquidated damages, and that he cannot be permitted to recover again for the same wrong by suing for damages for waste under the statute. In support, she cites *Warstler v. Cibrian*, 859 S.W.2d 162 (Mo. App. W.D.1993), for the point that "[l]iquidated and actual damages generally may not be awarded as compensation for the same injury." *Id.* at 165. Moreover, she argues, had Mr. Brizendine desired to exclude waste damages from the operation of the liquidated damages clause he could have simply included language in the Agreement to that effect.

■ The terms of the Agreement do not support Ms. Conrad's position. The statute is clear that a landlord is entitled to

damages for waste unless the tenant has a special license to commit waste. It was not incumbent on Mr. Brizendine, therefore, to include a provision in the Agreement that statutory damages for waste were not waived; rather, it was Ms. Conrad's burden to show that the Agreement, or some other document, expressly or impliedly gave her a special license to commit waste.

While Ms. Conrad says the liquidated damages clause served this function, she cites no case holding that a liquidated damages clause constitutes a special license to commit waste. Cases finding such a license have either interpreted documents, such as a will, that expressly waived damages for waste, *see, e.g., Frey v. Huffstutler*, 748 S.W.2d 59, 62, 63–64 (Mo.App. S.D.1988), or were cases in which permission to commit waste could be implied from the terms of the lease, such as where the lease permitted substantial improvements and changes to the property by the lessee.[3]

Here, by contrast, there are multiple reasons why the terms of the Agreement do not support finding that the liquidated damages clause constituted a special license for waste. First, the liquidated damages clause does not mention waste, although it could easily have done so, just as did the will provision at issue in *Huffstutler*. Second, Ms. Conrad was required under the lease to forfeit the $15,000 she had already paid to Mr. Brizendine whether or not waste occurred, for paragraph 5

2. In support, she cites *Rudnitski v. Seely*, 452 N.W.2d 664 (Minn.1990). That case is not on point.

3. For instance, in *Southern Real Estate and Financial Co. v. City of St. Louis*, 758 S.W.2d 75, 77 (Mo.App. E.D.1988), the lease provided that the lessee *"may at any time* and *from time to time* at its own cost and expense *reconstruct, alter or replace any improvements*

then existing *in such manner as Lessee shall desire"* and that the lessee "shall have the right . . . . to erect . . . . such improvements . . . . *in such form, size and character . . . . for such uses and purposes as Lessee shall determine,* provided the same shall comply with all laws. . . ." *Id.* at 78. The land was originally vacant, and the term of the lease was very lengthy.

provided that the money was to be retained by him even if the purchase fell through, and paragraph 14 provided that the money would be paid as liquidated damages for *any* breach of the Agreement, not merely for waste.

■■■ Third, far from giving Ms. Conrad a license to commit waste, paragraph 3 and its subparts specifically obligated Ms. Conrad, as the tenant, to repair and maintain the premises, to provide trash removal, and to keep the grass "neatly mowed." The Agreement also specifically stated that the tenant could not "make any renovation of the interior or exterior of the premises which would permanently alter such interior or exterior" without the written consent of the lessor, and further required "all improvements must be approved by Lessor." The Agreement also restricted the uses to which the tenant could put the property, stating that unless written consent of the Lessor were first obtained, Ms. Conrad could only "use the premises as residential and commercial rental property and for no other purpose. . . .". Finally, the Agreement provided that, if the purchase were not consummated, Ms. Conrad was to surrender the property "in the same condition as received, ordinary wear and tear excepted." [4]

Read as a whole, these provisions of the Agreement refute Ms. Conrad's claim that the parties intended the presence of the $15,000 liquidated damages clause to constitute a "special license" to commit waste.

Nothing in the Agreement suggests such a license; to the contrary, the Agreement provided that no damage or alterations were to be made to the property and it was to be returned in good condition. Therefore, the fact the Agreement contained a liquidated damages clause does not preclude Mr. Brizendine from recovering from his tenant, Ms. Conrad, for waste under section 537.420.

**B. *Ms. Conrad Is Not Entitled to Set Off***

■■■ Finally, Ms. Conrad argues that the $15,000 that Mr. Brizendine retained as liquidated damages under the Agreement should be treated as a set-off against the treble damages awarded by the trial court, so as to avoid allowing Mr. Brizendine a double recovery. It is not clear that Mr. Brizendine's retention of the $15,000 does constitute a double recovery for the waste, in that, as noted earlier, even had the property been returned without any waste, he would have been entitled to keep that money, as liquidated damages for Ms. Conrad's failure to close on her purchase of the property.

Even were Ms. Conrad otherwise entitled to a set-off, however, she has waived her right to it. Set-off has traditionally been considered an independent action that must be pleaded as a counterclaim. *Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 129–30 (Mo. banc 1985) (set-off is an independent action by the defendant against the plaintiff). *See also Edmonds v. Stratton*, 457 S.W.2d 228, 232

---

**4.** Ms. Conrad's claim that the exception for ordinary wear and tear is an express license to commit waste flies in the face of the ordinary meaning of those terms. " 'Ordinary wear and tear' includes any usual deterioration from use of the premises during the lease period. . . .". 49 Am.Jur.2d, Landlord and Tenant Section 893. It means "normal depreciation." *Id. See also Black's Law Dictionary* 1593 (6th ed. 1990) (" 'Natural wear

and tear' means deterioration or depreciation in value by ordinary and reasonable use of the subject-matter."). Waste, on the other hand, "is the failure of a lessee to exercise ordinary care in the use of the leased premises or property that causes material and permanent injury thereto over and above ordinary wear and tear." *McLane v. Wal–Mart Stores, Inc.*, 10 S.W.3d 602, 605 (Mo.App. E.D.2000).

(Mo.App. S.D.1970) (discussing the nature of set-off, recoupment, and counterclaim, and noting that a set-off, "a term loosely and confusingly used," is "included within the remedy of a counterclaim."). No counterclaim for set-off was filed here.

 There is also authority for treating set-off as an affirmative defense rather than as a counterclaim. *See Bank of Kirksville v. Small*, 742 S.W.2d 127, 131 (Mo. banc 1987) (characterizing a set-off claim as an affirmative defense); *Reynolds County Memorial Hosp. v. Sun Bank of America*, 974 S.W.2d 663, 666 (Mo.App. S.D.1998) (same). Moreover, Rule 55.08 provides that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court may treat the pleadings as if there had been a proper designation." Rule 55.08. Like counterclaims, however, affirmative defenses must also be specifically asserted in a responsive pleading, Rules 55.08, 55.32, and Ms. Conrad failed to raise set-off as either a counterclaim or as an affirmative defense in her answer. Neither did she raise it in a motion for new trial or other post-trial pleading in the trial court or even in her notice of appeal. She raised it for the first time in a footnote and in a paragraph at the end of the argument section of her brief in this Court.

The trial court cannot have erred in denying a claim for set-off that was never presented to it. *State ex rel Nixon v. American Tobacco Co., Inc.*, 34 S.W.3d 122, 129 (Mo. banc 2000) ("An issue that was never presented to or decided by the trial court is not preserved for appellate review"); *VanBooven v. Smull*, 938 S.W.2d 324, 330 (Mo.App. W.D.1997) ("[A]n appellate court will not convict the trial court of

error on an issue which was never before it to decide"). In addition, an argument not set out in the point relied on but merely referred to in the argument portion of the brief does not comply with the requirements of Rule 84.04(d) and the point is considered abandoned in this Court. *J.A.D. v. F.J.D.*, 978 S.W.2d 336, 338 (Mo. banc 1998); *Baker v. Empire Dist. Elec. Co.*, 24 S.W.3d 255, 257 (Mo.App. S.D. 2000); Rule 84.04(d).[5]

## IV. CONCLUSION

For all of the foregoing reasons, the judgment of the trial court is affirmed.

LIMBAUGH, C.J., WHITE, WOLFF, BENTON and PRICE, JJ., concur.

RICHARD B. TEITELMAN, J., not participating.

---

**5.** Although, in its discretion, this Court may give plain error review to a point not set out in the point relied on, such review is not

requested here and would not be merited in light of the failure to raise this issue below.