**Thomas G. WHITE, et al., d/b/a TCP Partnership, Respondents,**

v.

**Phyllis MARSHALL, et al., Appellant.**

**No. WD 59852.**

Missouri Court of Appeals, Western District.

July 9, 2002.

Rehearing Denied Aug. 22, 2002.

Paul D. Sinclair and John A. Watt, Kansas City, for Respondents.

Ronald K. Barker, Kansas City, for Appellant.

Before ELLIS, P.J., and SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Phyllis Marshall appeals from the judgment of the circuit court finding for the respondents, Thomas G. White, Christopher J. White, and Paul T. White, d.b.a. TCP Partnership, and awarding them $2900 in damages and $390 in attorney's fees on their claim for damage done to an apartment, which they had rented to the appellant.

The appellant raises two points on appeal. In Point I, she claims that the trial court erred in awarding the respondents damages based on the cost of repairs because an award of damages on that basis was a misapplication of the law and was against the weight of the evidence. In Point II, she claims that the trial court erred in awarding the respondents $390 in attorney's fees under an expired lease signed by her former roommate because there was no evidence that she was subject to the provisions of the lease.

Affirmed in part, and reversed and remanded in part.

### Facts

In February 1997, Jim Mayer moved into a townhouse apartment located at 9902 Locust, Kansas City, Jackson County, Missouri, after signing a one-year lease. While it is unclear whether the respondents were the owners of the apartment at that time, there is no dispute that they were the owners at all relevant times concerning this appeal.

Within several days of Mayer's moving into the apartment, the appellant, a social acquaintance of Mayer's for over twenty years, accepted his offer to move into the apartment with him. Although the appellant verbally agreed with Mayer to pay one-half of the monthly rent and utilities for the apartment, she never signed an agreement with Mayer to that effect nor did she sign Mayer's then lease.

Mayer and the appellant continued to reside in the apartment and pay rent even after Mayer's first lease had expired in February 1998. Eventually, on May 2, 1998, Mayer signed a second lease with the respondents, which was effective from September 1, 1998, through August 31, 1999. Although the respondents were aware at the time of the appellant's residing in the apartment, she was never asked to sign the lease nor did she.

After Mayer's second lease had expired on August 31, 1999, he and the appellant continued to reside in the apartment and pay rent with the consent of the respondents. In December 1999, the respondents notified Mayer that he was in arrears on his rent and requested that he move out of the apartment. Thereafter, sometime in late December 1999, Mayer moved out. After Mayer moved out, the appellant continued to reside in the apartment, with the respondents' consent, and pay rent, without ever being required to sign a written lease or rental agreement.

On or about February 2 or 3, 2000, when the appellant delivered her monthly rent check to the respondents, she gave notice that she planned on moving out of the apartment. The appellant moved out on March 30 or 31, 2000. Miryam Sinclair, manager of the respondents' apartment complex, inspected the apartment on April 14, 2000. Sinclair noted that the appellant had repainted several walls with white, black, and gold designs, and trash was strewn about every room. Sinclair additionally noted that the carpet in the apartment, which emitted an unpleasant odor,

was stained and littered with sand and dirt. She also found that there were numerous holes in the walls throughout the apartment. As a result of the condition of the apartment when the appellant moved out, the respondents, *inter alia*, had to repair and repaint the walls, remove the trash and other debris from the premises, and replace all of the carpet and linoleum throughout.

To recover the cost of the repairs for the apartment, the respondents filed a petition for damages against the appellant and Mayer on July 27, 2000, in the Circuit Court of Jackson County. They filed a first amended petition on January 18, 2001, alleging "substantial damage to the property beyond normal wear and tear" in "violation of the Lease," requiring $5692 in repairs. The amended petition also alleged a claim for attorney's fees, as provided for in the lease. The appellant filed an answer to the amended petition on February 23, 2001.

The respondents' amended petition was heard in a one-day bench trial on March 2, 2001, at the conclusion of which the trial court entered judgment in favor of the respondents and against the appellant, awarding the respondents $2900 in damages and $390 in attorney's fees.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court erred in awarding the respondents damages based on the cost of repairs because an award of damages on that basis was a misapplication of the law and was against the weight of the evidence. Specifically, the appellant claims that before the trial court could award damages based on the cost of repairs, it was required to first find that the cost of repairs was less than the diminution in value of the apartment, the difference between the fair mar-

ket value of the apartment at the time the appellant vacated the apartment, had no damage occurred, and its fair market value in its damaged condition, and that no such finding was or could have been made by the court in that there was no evidence in the record as to the fair market value of the apartment, before or after the damage.

■ "In a court-tried case, the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Smith v. Seamster*, 36 S.W.3d 18, 20 (Mo.App.2000) (*citing Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). Upon review of a court-tried case, " '[w]e afford the trial court deference with regard to its determinations of credibility and view the evidence in the light most favorable to its decision.' " *Word v. Peterson*, 57 S.W.3d 894, 897 (Mo. App.2001) (*quoting Haden v. Riou*, 37 S.W.3d 854, 860 (Mo.App.2001)).

In their first amended petition for damages, the respondents alleged that the appellant and her former roommate, Mayer, damaged the apartment in "violation of the Lease," presumably the last lease that was executed by Mayer on May 1, 1998, which ran from September 1, 1998, to August 30, 1999. However, it is clear from the record that the appellant could not be held liable under the lease, as asserted in the respondents' petition, in that she was not bound by it.

■ In order to find that the appellant was bound by the terms of the lease, there would have had to have been evidence that the lease was signed by the appellant or her agent, or evidence that the parties intended for the appellant to be bound by the lease even though she had not signed it. *See Hamilton Music, Inc. v. Gordon A. Gundaker Real Estate Co.,*

*Inc.*, 666 S.W.2d 840, 845 (Mo.App.1984) (stating the general rule that a party who did not sign a contract can still be held liable on such a contract if it was signed, or entered into, on the party's behalf by his or her authorized agent); *Stege v. Hoffman*, 822 S.W.2d 517, 518 (Mo.App.1991) (holding that a signature is not always essential to bind parties to a contract if the evidence indicates that the parties intended to be bound to the contract). In that regard, it is undisputed from the record that the appellant never signed a lease with the respondents nor did any agent on her behalf, including Mayer. In addition, while it is clear from the evidence that the respondents had consented to the appellant's living in the apartment and paying rent on a monthly basis, there is nothing in the record to suggest that the appellant intended to be bound by the lease that expired August 30, 1999, or any other lease. Thus, pursuant to § 441.060.3,[1] the appellant was a month-to-month tenant. Section 441.060.3 reads, in pertinent part:

> Except as otherwise provided by law, all contracts or agreements for leasing, renting or occupation of stores, shops, houses, tenements or other buildings in cities, towns or villages, and of stores, shops, houses, tenements or other buildings except when such leasing, renting or occupation is a tenant of real estate used or rented for agricultural purposes, other than garden purposes, not made in writing, signed by the parties thereto, or their agents, shall be held and taken to be tenancies from month to month.

■ The fact that the appellant was not a lessee under the lease, but a month-to-month tenant, such that the respondents could not succeed against her on a claim for damages in "violation of the Lease," as they alleged in their petition, is not fatal to our upholding the respondents' award of

damages. That is so in that the appellant does not challenge the trial court's judgment on the basis that it was outside the theory of recovery pled by the respondents in their petition. Rather, she only attacks the measure of damages employed by the trial court in entering its award. *See Stewart v. Sturms*, 784 S.W.2d 257, 259 (Mo.App.1989) (holding that appellate review is limited to those issues properly raised in the points relied on). As such, we will not reverse on the basis that the evidence does not support the theory of recovery alleged in the respondents' petition. Having so found, we turn to the question that was raised in this point by the appellant, the question of whether the proper measure of damages was applied by the trial court in awarding the respondents $2900 in damages.

In their first amended petition, the respondents alleged cost of repairs of:

(1) Trash Removal——$300.00

(2) Painting——$2000.00

(3) Replacement of carpet and linoleum——$2055.00

(4) Replacement of window blinds——$171.50

(5) Changing locks as a result of failure to return keys——$123.67

(6) Extermination——$20.00

(7) Miscellaneous repairs and materials——$1022.69

Total damages = $5692.86

At trial, the respondents presented evidence in support of the alleged cost of repairs, consisting of receipts from various contractors who made repairs to the appellant's apartment after she moved out. As stated, *supra*, the appellant contends that the trial court's award of damages was for a portion of the cost of repairs alleged and that such an award could not be made

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

under the law and facts of the case, arguing that to make such an award the court had to first find that the cost of repairs was less than the diminution in value of the apartment and that there was no evidence to make such a finding in our case. The respondents essentially concede in their brief that the trial court's award of damages was for cost of repairs. However, they contend that the trial court was justified under the law and facts of the case to award damages on that basis, citing *McLane v. Wal–Mart Stores, Inc.*, 10 S.W.3d 602, 605 (Mo.App.2000).

 As a general rule, damages for waste or tortious damage to realty are based upon diminution of value. *Id.; Lipton Realty, Inc. v. St. Louis Housing Auth.*, 705 S.W.2d 565, 569 (Mo.App.1986). Diminution of value is the difference between the fair market value of the property at the end of the tenancy, had no damage occurred, and the fair market value of the property as damaged. *Brown v. Midwest Petroleum Co.*, 828 S.W.2d 686, 687 (Mo.App.1992). While damages for waste or tortious damage to realty, as a general rule, are based on diminution of value, "the cost of repairs may be allowed when the cost of repairs is small in relationship to the property as a whole and is easily ascertained." *McLane*, 10 S.W.3d at 605. And, as the appellant points out, to prevent a windfall to the injured party, the cost of repairs is sometimes limited to the diminution in value. *Id.* at 606. Because the goal of damages in a contract action is to place the injured party in the same position that the party would have been in had the contract been performed, while the goal in a tort action is to restore the injured party to the position the party would have been in if the injury had not occurred, cost of repairs is favored in contract cases and diminution of value is favored in waste or tortious damage to property cases. *Id.* at 605. Thus, it would

appear at first blush that the appellant is correct in her assertion that the trial court erred in basing its award of damages to the respondents on the cost of repairs in that there was no evidence from which the court could find that the cost of repairs was less than the diminution in value of the apartment. However, on closer inspection, and for the reasons stated, *infra*, we find no error in the trial court's awarding damages based on the cost of repairs.

 As the court in *McLane* pointed out, despite the preference for one measure of damages over another, "the particular facts of each case determine which measure of damages is to be used." *Id.* at 606. From this, the court reasoned that where evidence is introduced establishing that the damage to the property is temporary and readily capable of repair, " 'it would be unrealistic' to require plaintiff to introduce additional evidence of the before and after value of the entire building because the evidence of the cost of repairs logically reflects the property's reduction in value." *Id.* (citation omitted). Thus, the court held that where evidence is introduced establishing that the damage to the property is temporary and readily capable of repair, the burden of establishing that diminution of value was the appropriate measure of damages would fall on the tenant such that "[w]here evidence of the cost of repairs has been offered without objection and the [tenant] offers no evidence of the diminution in the market value of the property, the [tenant] may not complain on appeal that damages based on cost of repair were improperly awarded." *Id.* at 606–07. Accordingly, inasmuch as the appellant here did not object below to the respondents' evidence of cost of repairs and offered no evidence of the diminution in value of the property, the appellant cannot now be heard to complain on appeal that the trial court's award of damages to

the respondents based on cost of repairs was in error because there was no evidence of diminution of value.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred in awarding the respondents $390 in attorney's fees under the expired lease signed by Mayer on May 2 because there was no evidence that she was subject to the provisions of the lease, specifically the provision that allowed the recovery of attorney's fees by the respondents in the event that they were forced to take legal action to enforce the terms of the lease. Specifically, she claims that she was not bound by the lease in that it was undisputed that she did not sign it nor did any agent sign it on her behalf and that there was no evidence of any intent on her part to be bound by the lease.

 As to the award of attorney's fees, Missouri courts adhere to the "American Rule," which provides, with few exceptions, that absent statutory authorization or contractual agreement, each litigant must bear the cost of attorney's fees incurred. *Volk Const. Co. v. Wilmescherr Drusch Roofing Co.*, 58 S.W.3d 897, 901 (Mo.App.2001). "If a contract provides for the payment of attorney's fees in the enforcement of a contract provision, the trial court must award them to the prevailing party." *Howe v. ALD Servs., Inc.*, 941 S.W.2d 645, 652 (Mo.App.1997) (citation omitted). In that regard, in their amended petition, the respondents alleged a right to attorney's fees under the lease signed by Mayer on May 2, 1998.

There is no dispute that the lease was the only vehicle by which the respondents could receive an award of attorney's fees. Inasmuch as we held in Point I, *supra*, that there was no evidence from which the trial court could find that the appellant was bound by the provisions of the second lease signed by Mayer, including the provision for attorney's fees, the court necessarily erred in awarding the respondents $390 in attorney's fees, relying on that lease provision.

### Conclusion

The circuit court's award of damages to the respondents of $2900 is affirmed. The circuit court's award to the respondents of $390 in attorney's fees is reversed and the cause remanded to the court with directions for it to enter an amended judgment deleting any award for attorney's fees.

ELLIS, P.J., and HOWARD, J., concur.